IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO – Dayton Division

| | | |
|---|---|---|
| **MICHAEL POFFENBARGER** | : | Case No.: |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

### PLAINTIFF'S MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Imagine engaging in an entire façade, putting forth an entire process and procedure by which individuals can apply for religious exemptions via the federal Religious Freedom Restoration Act, and then systemically and routinely denying such applications (in fact, not a single exemption has been granted to date) when it comes to vaccines generally and the COVID-19 vaccine specifically (in violation of federal law).

This Plaintiff faces punitive action, at **noon on Monday January 3, 2022**, and he seeks a limited temporary restraining order, meant only to preserve the status quo to prevent the Defendants from imposing punitive action (including a court martial) against him for his refusal to comply with an order regarding such vaccination during the pendency of this matter. He seeks a broader preliminary injunction, to include granting his religious exemption, and requiring Defendants to comply with the federal RFRA both as to Lt. Poffenbarger and more broadly to the other airmen whose rights Defendants are violating. Proposed Orders, outlining the scope of the requested relief, is attached.

Plaintiff, by and through Counsel, moves this Court for the foregoing Emergency Temporary Restraining Order and Preliminary Injunction. In support, he offers two declarations,

1

his own, and Dr. Peter McCullough, MD, MPH, as well as the accompanying memoranda, and a proposed orders.

        Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (PHV forthcoming)
Elizabeth Brehm (PHV forthcoming)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

/s/Zach Gottesman_____
Zach Gottesman (OH 0058675)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
**Attorneys for Plaintiff**

## CERTIFICATION UNDER FRCP 65

      Pursuant to FRCP 65(b)(1)(A), the Temporary Restraining Order, limited only to preserving the *status quo*, and precluding Defendants from taking punitive actions against the Plaintiff during the pendency of this matter, which is set to be taken at noon on January 3, 2022, herein should be granted without notice because the rights involved are irreparable, as explained in the attached Memorandum in Support and Verified Complaint, and the institution of punitive actions, including criminal charges against the Plaintiff through trial by Court Martial, by the Defendants during the pendency of this matter will result in the possibility of conflicting rulings, could create thorny jurisdictional issues; further, pursuant to FRCP 65(b)(1)(B), I sent a copy of the foregoing to SAF.GCA.Workflow@us.af.mil which is the working email address for the

General Counsel of the Air Force, and to andrew.e.carmichael@usdoj.gov and courtney.d.enlow@usdoj.gov  who are each known to the undersigned to be attorneys who are known to work in the Federal Programs Branch of the U.S. Department of Justice, and likely to be assigned to defend this matter (or to know who will be so assigned), and to be handling similar issues in a Department of the Navy Case (*US Navy SEALs 1-26 v. Biden, et. al.*, NDTX Case No. 4:21-cv-01236), on January 2, 2021, as soon as these moving papers were ready, and that this email notification is reasonably calculated to provide notice to the Defendants.  Given time constraints and the significant consequences to this Plaintiff at stake, additional notice was not feasible.

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon each Defendant at their addresses (and the United States by service upon the U.S. Attorney and U.S. Attorney General), by priority U.S. mail, as well by CM/ECF, this 3 day of January, 2022.

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO – Dayton Division

| | | |
|---|---|---|
| **MICHAEL POFFENBARGER** | : | Case No.: |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Plaintiff, by and through Counsel, provides this Memorandum in Support of his Motion for Preliminary Injunction and Temporary Restraining Order.

### I. FACTS

1. Facts regarding the Plaintiff, and his efforts to obtain a religious exemption from Air Force vaccination requirements

On or about September, 2021, Plaintiff, then on active duty for training and in Officer Training School, received an order to be vaccinated by the Defendant Kendall, Secretary of the Air Force. (Pl.'s Verified Complaint ¶ 7; Declaration Poffenbarger). A true and accurate copy of that order is attached to Plaintiff's Complaint as Exhibit 1. *Id.* Plaintiff then began the administrative process to seek a religious accommodation under RFRA, and its implementing regulations, including, without limitation, Department of Defense Instruction ("DoDI") 1300.17. (*Id.* at ¶ 8).

Ultimately, Plaintiff was commissioned in September, 2021, and permitted to graduate Officer Training School, with the request for accommodation pending. (*Id.* at ¶ 9). He was then returned to the active reserves, where he has been assigned to the 455th Operational Support

1

Squadron, located at Wright-Patterson, Air Force Base, which is located in his judicial district. *Id.*

On or about October 2, 2021, Plaintiff received a direct order to be vaccinated from his then-commander, Lt. Colonel Sopko (who has since been replaced by Lt. Colonel Kojak). (*Id.* at ¶ 10). A true and accurate copy of that order is attached to Plaintiff's Complaint as Exhibit 2. *Id.* Again, in response to this order, Plaintiff pursued administrative remedies under RFRA, DoDI, and applicable Air Force Instructions, and his religious accommodation request was sent to the Commander of Air Force Reserve Command, Defendant, Lt. General Richard W. Scobee. (*Id.* at ¶ 11).

On or about October 22, 2021, Defendant, Lt. General Richard W. Scobee, denied Plaintiff's accommodation request. (*Id.* at ¶ 12). A true and accurate copy of that order is attached hereto as Exhibit 3 to Plaintiff's Complaint. *Id.* The Scobee denial first acknowledged the sincerity of Plaintiff's religious beliefs, but stated that mission readiness required the vaccination of the Plaintiff from COVID-19. (Id. at ¶ 13). At the same time, Scobee has approved accommodations for administrative and/or medical reasons. *Id.* Thus, Scobee's denial can only be explained as a hostility to Plaintiff's religious beliefs, and not a good faith application of RFRA. *Id.* He is thus personally liable under RFRA for damages to Plaintiff, and others similarly situated. *Id.*

The Plaintiff then undertook an administrative appeal to the Surgeon General of the Air Force, Lt. General Robert I. Miller, of Scobee's denial, on October 30, 2021. (*Id.* at ¶ 14). A true and accurate of that appeal, which also set forth in detail the Plaintiff's religious beliefs, is attached hereto as Exhibit 4. *Id.*

On or about December 8, 2021, Lt. General Robert I. Miller also denied Plaintiff's appeal, a true and accurate copy of which is attached hereto as Exhibit 5. (*Id.* at ¶ 15). In fact, as of the date of this Complaint, absolutely zero religious exemptions/accommodations have been granted across the Air Force, and at least 2,130 such requests have been denied. *Id.* The Air Force has begun discharging such airmen. (Id. at ¶ 16). In the meantime, and belying any assertion that vaccination is mission-critical and that no exemptions can be granted, the Air Force has approved at least 1,866 medical or administrative exemptions. (*Id.* at ¶ 17).

On December 12, 2021, Plaintiff received an order from his commander, Lt. Colonel Christopher Kojak, forwarding an order from the 4th Air Force Commander, Major General Jeffrey Pennington, attached as Exhibit 6. (*Id.* at ¶ 18). That order, which also incorporates an order from his Wing Commander, Colonel Raymond Smith, requires him to be vaccinated on his next duty day, which is Monday, January 3, 2022. *Id.* The order indicates it is an order backed by punitive action, specifically the possibility of court martial under Article 92, UCMJ (10 U.S.C. § 892). *Id.*

Upon information and belief, Defendant Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy. (*Id.* at ¶ 19). The evidence for this includes, without limitation, that not a single such accommodation request has been granted, despite the fact that both medical and administrative exemptions have been granted, undermining any mission requirement argument. *Id.*

Defendants Pennington, Kojak, and Smith, were each aware, at the time of their actions that: (i) the Air Force, and Defendants Kendall, Scobee, and Miller each have failed to grant (or even meaningfully consider) any religious accommodation request; (ii) but have processed and

3

approved medical and/or administrative accommodations; but each, in violation of RFRA, and (iii) that the accommodation could be granted consistent with Plaintiff's military duties; but nevertheless took, continue to take, and threaten to take additional actions against the Plaintiff, including the threat of punitive actions including court-martial. (*Id.* at ¶ 20).

Because the order in question violates Plaintiff's fundamental dictates of religion, he is unable to comply with it, and cannot adhere to it, even if it means federal prison through the UCMJ process. (*Id.* at ¶ 21).

To be clear, and without limitation, the Air Force has accommodated numerous airmen, at least from a medical or administrative perspective. (*Id.* at ¶ 22). The Air Force has granted medical waivers to vaccination requirements, belying any claim that vaccination is a must for mission accomplishment. *Id.* The Air Force has also accommodated persons with HIV, providing waivers to permit them to remain in the service, demonstrating the ability to accomplish the mission. (Id. at ¶ 23).

Furthermore, the vaccination requirement, including with respect to COVID-19, does not prevent infection, as breakthrough cases are increasingly becoming more prevalent. (*Id.* at ¶ 24). However, the government must prove, but cannot prove, that it has a compelling interest to mandate a vaccine that has not demonstrated prevention or transmission of a virus. (*Id.* at ¶ 25).

Among other methods, the Air Force could accommodate Lt. Poffenbarger's request by, without limitation:

    a.    Requiring testing to determine infection;

    b.    Temperature checks and/or other screening to determine infection;

    c.    Permitting and providing for Lt. Poffenbarger to become infected with COVID-19, so as to develop what is now a recognized, long lasting, natural immunity;

  d.  Provide an exemption anyways in that vaccination will not guarantee immunity, and there are members who are currently serving who are not immune to diseases they were vaccinated for, yet they remain able to serve and deploy;

  e.  Requiring isolation to keep Lt. Poffenbarger away from those with the disease;

  f.  Place Lt. Poffenbarger in a position and/or Military Occupational Specialty that is available for remote work or telework, and not in contact with other airmen;

  g.  Given the significant level of vaccine compliance within the military, accommodating the few numbers of medical and documented religious exemption requests by providing an exemption, which is not a burden;

  h.  As a second to last final option, place Lt. Poffenbarger in non-deployable status and/or assignment to a unit that does not deploy overseas; and/or

  i.  As a final option, honorably discharge Lt. Poffenbarger.  (Id. at ¶ 26).

2. <u>There is no medical justification for the Air Force's position</u>

Attached to this motion is the Declaration of Dr. Peter McCullough, MD, MPH. (Declaration McCullough).  He completed his medical degree as an Alpha Omega Alpha graduate from the University of Texas Southwestern Medical School in Dallas. *Id.* at ¶ 2.  He went on to complete my internal medicine residency at the University of Washington in Seattle, a cardiology fellowship including service as Chief Fellow at William Beaumont Hospital, and a master's degree in public health at the University of Michigan.  *Id.*  He is board certified in internal medicine and cardiovascular disease and holds an additional certification in clinical lipidology, and previously echocardiography. *Id.* at ¶ 3.  He practices internal medicine and clinical cardiology as well as teaches, conducts research, and is an active scholar in medicine with roles as an author, editorialist, and reviewer at dozens of major medical journals and

5

textbooks. *Id.* He also participates in the maintenance of certification programs by the American Board of Internal Medicine for both Internal Medicine and Cardiovascular Diseases. *Id.* He has a number of other extensive qualifications, that are set forth in his declaration and accompanying C.V., including peer reviewed publications on COVID-19. *Id.* at ¶¶ 2-12.

He testifies to serious medical concerns about the current Pfizer vaccine. *Id.* at ¶¶ 13-16. But beyond that, he provides evidence that the current vaccines are not effective at preventing the spread of the disease, or in protecting any particular group or community against the spread of the vaccine (part of that is due to mutations in the virus, in which breakthrough infections are increasingly occurring). *Id.* at ¶¶ 17-20. He also observes that, using herd immunity calculations, we should have achieved this already, and predicts no further benefits from further vaccination efforts. *Id.* at 21-22.

But Dr. McCullough then concludes:

> In my expert medical opinion which is and is within a reasonable degree of medical certainty, despite the prior Delta variant outbreak, and the present Omicron variant outbreak, the increasing likelihood of herd immunity to COVID-19, the low risk to children and adolescents of serious complications or death due to COVID-19, the negligible risk of asymptomatic spread of COVID-19, the vastly improved COVID-19 treatments currently available all make the risks inherent in COVID-19 significantly lower than they were in 2020. *Id.* at ¶ 23.

And, he concludes that:

> There is no medical or scientific basis to conduct COVID-19 testing for only the unvaccinated, and, based on known data for infection and spread, and assuming the tests could be relied upon, rapid testing would need to be conducted on an entire population (and not only the unvaccinated) to have any possible meaningful impact on reducing transmission rates of COVID-19. *Id.* at ¶ 24.
>
> It is my expert medical opinion that the COVID-19 vaccines are progressively losing efficacy over the prevention of COVID-19 and in widely vaccinated countries (Israel, Iceland, Singapore) up to 80% of COVID-19 cases have been previously vaccinated implying the vaccines have become obsolete with antigenic escape or resistance to variants (e.g., Delta, Omicron) that have evolved to infect persons who were vaccinated against the now extinct wild-type SARS-CoV-2 strain. *Id.* at ¶ 25.

6

As is relevant to Lt. Poffenbarger, this evidence demonstrates no compelling governmental interest that is being furthered by the vaccine requirements (and penalties for failure to do so) at issue.

## II.     LAW AND ARGUMENT

### A. Standard

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public

interest to prevent the violation of a party's constitutional rights."). *See, also, Elrod v. Burns*, 427 U. S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

U.S. Supreme Court precedent suggests that the same standards apply to RFRA claims as apply to constitutional claims, viz., a collapsing of the standards when the government is the Defendant to look at the question of the merits. *Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). And Sixth Circuit precedent clearly compels the same collapsed analysis. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (analyzing identical Kentucky RFRA statute and noting that the issues collapse under RFRA).

### B. Law and Argument

1. <u>The directives and policies violate RFRA as applied to Lt. Poffenbarger, and others similarly situated</u>

Pursuant to 42 U.S.C. 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." Pursuant to 42 U.S.C. 2000bb-1(b), "Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

Defendants have, and continue, to substantially burden Plaintiff's exercise of religion, in light of their vaccine mandates, along with their refusal to timely process Plaintiff's accommodation request to that requirement (even though this is required by applicable regulation), do so not in furtherance of a compelling governmental interest, and do so in a manner that is not the least restrictive means of furthering any compelling governmental interest.

8

Further, pursuant to 42 U.S.C. 2000bb-1(c), "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."

The compelling of a medical procedure, and invasion on personal autonomy, in violation of conscience that comes from sincerely held religious belief, is certainly a substantial burden on religious practice. *Gonzales*, 546 U.S. 418, 428-32; *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009); *Holt*, 574 U.S. 352; *Burwell*, 573 U.S. 682. And there is no doubt but that the Defendants are likely to assert that they have a "a compelling interest in preventing the spread of a novel, highly contagious, sometimes fatal virus." *Maryville*, 957 F.3d 610, 613.

However, in *Maryville*, as here, the "likelihood-of-success inquiry instead turns on whether [the challenged] orders were 'the least restrictive means' of achieving these public health interests." *Id.* "That's a difficult hill to climb, and it was never meant to be anything less." *Id.* Defendants cannot, and do not, meet that burden here.

The Sixth Circuit's most recent decision that touches on RFRA is *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021). *Ackerman* was a RLUIPA case, but, as explained by the Sixth Circuit in Ackerman, the analysis is (with one exception, which accounts for unique prison condition expertise issues) largely identical. *Id.* at 180, fn.5. The sincerity prong just requires courts "'to determine whether the line drawn' by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs 'reflects an honest conviction.'" *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018). But here, the Air Force tested sincerity through interviews with Chaplains, and Lt. Poffenbarger unquestionably has sincerely held beliefs that have been impacted. Lt. Poffenbarger has also demonstrated a substantial burden on his beliefs. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019).

9

The burden thus shifts to the Government to "justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test.'" *Ackerman*, 16 F.4th 170, 179.[1] This "standard is 'exceptionally demanding,' and requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364 (alterations in original) (*quoting Hobby Lobby*, 573 U.S. at 728).

Belying any arguments about least-restrictive-means:

(i) Defendants have granted medical and administrative exemptions to vaccines, belying any argument that vaccination is absolutely required to achieve any asserted governmental interest;

(ii) Defendants accommodate HIV positive soldiers, demonstrating that the existence of a disease, even a lethal or transmittable disease, does not require the discharge of soldiers;

(iii) Defendants could require (timely and accurate) testing to determine infection and then take measures accordingly;

(iv) Defendants could require temperature checks and/or other screening to determine infection;

(v) Permitting Lt. Poffenbarger, in the ordinary course of interactions with others, to become infected with COVID-19 (which will inevitably occur), so as to develop what is now a recognized, long lasting, natural immunity;

---

[1] The aspect of the RLUIPA claim that requires "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," is <u>not applicable</u> in RFRA case. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

10

(vi) Defendants could provide an exemption anyways in that vaccination will not guarantee immunity (in fact there is robust evidence, as demonstrated above from Dr. McCullough, that there is no such immunity conferred by current vaccines), and there are members who are currently serving who are not immune to diseases they were vaccinated for, yet they remain able to serve and deploy;

(vii) Require isolation where appropriate to keep Lt. Poffenbarger away from those with the disease;

(viii) Place Lt. Poffenbarger in a position and/or Military Occupational Specialty that is available for remote work or telework, and not in contact with other soldiers;

(ix) Given the significant level of vaccine compliance within the military, accommodate the few numbers of documented medical and religious exemption requests by providing an exemption to those members;

(x) As a second to last final option, place Lt. Poffenbarger in non-deployable status and/or assignment to a unit that does not deploy overseas; and/or

(xi) As a final option, honorably discharging Lt. Poffenbarger.

The Government has not demonstrated, and cannot demonstrate, that none of these steps work (starting with least burdensome on Lt. Poffenbarger and others similarly situated and extending to most burdensome). Of course, given Dr. McCullough's opinions, there is *no governmental interest* that is actually furthered by the COVID-19 vaccine mandate. The current vaccinations are not preventing the spread of the current mutated and original strains of COVID-19.

And, to be clear, Plaintiff here seeks not only that his exemption be processed and accepted, but that the Defendants discontinue their current practices of categorically denying

11

religious exemptions, while apparently processing administrative and medical exemptions in the ordinary manner. Treating those who have obtained religious accommodations as second-class citizens is an additional substantial burden on their religious practices that are unwarranted and illegal under RFRA.

RFRA (42 U.S.C. 2000bb-1(a)), has been violated, and Plaintiff has demonstrated a likelihood of success on the merits.

> 2. The directives and policies violate the First Amendment as applied to Lt. Poffenbarger, and others similarly situated

In addition to RFRA, the same requirements, particularly with the secular exceptions in the vaccination policy, give rise to a free exercise challenge. This is also not traveling new ground. Government is not permitted to treat religious activity worse than it treats comparable secular activity. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). And the existence of exceptions for, e.g., medical exemptions or administrative exemptions (which Plaintiff has plead have been granted and have, in fact, been granted), from the vaccination policy at issue, demonstrate that religious accommodations must be permitted as well. *Id.*, *see, also, Maryville*, 957 F.3d 610, 614; *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, (2021).

*Fulton* teaches that "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877. Further, "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* That is especially true here, where requests for religious accommodation are routed through the Surgeon General, who makes an individual, case-by-case assessment. Here, as in *Fulton*, the Air Force's vaccine exemption regime "incorporates a system of individual

12

exemptions, made available in this case at the 'sole discretion' of the [Surgeon General]." *Id.* at 1878.

Here, as in *Fulton*, that official has granted various secular exemptions, but denied all religious exemptions, however the Constitution requires and provides that he "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Id.* As with the RFRA claim, the Government must demonstrate narrow tailoring, a task which is impossible if "the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.* at 1881.

In fact, the Defendants certainly <u>know</u> that they have violated the law and cannot make the requisite showing. There is another term for this: a hostility to religious exemptions, running to the top levels of the Air Force and the named Defendants. And that, as it turns out, is patently unconstitutional. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U. S. ___, (2018).

The First Amendment has been violated, and Plaintiff has demonstrated a likelihood of success on the merits.

    3. <u>A nationwide preliminary injunction should issue</u>

In *Califano v. Yamasake*, 442 U.S. 682 (1979), the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." Indeed, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087, 198 L. Ed. 2d 643 (2017) (per curiam); *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction

13

is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

Plaintiff requests an injunction (and has proposed an order) that: (i) requires the immediate processing and acceptance of Lt. Poffenbarger's religious accommodation request under RFRA; (ii) requires timely and good faith processing of other religious accommodation requests in accordance with the timelines contained in current Department of Defense instructions, and appropriately considers whether such request can be accommodated within the framework of RFRA and its least restrictive means (as well as a fulsome consideration of alternatives to denial of such request);[2] and (iii) ceases the Defendants' current policies of engaging in a double standard between medical and administrative exemptions, on the one hand, which are granted where appropriate, and religious exemptions, on the other, which are never granted.

### III. CONCLUSION

Plaintiff seeks a preliminary injunction and temporary restraining order as prayed for. A proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (PHV forthcoming)

---

[2] Because each of these requests necessarily depends on the facts and circumstances of each request, we do not, at present, go beyond these general requirements as pertains to others. For instance, in some cases, the chaplains may determine that a request is not motivated by a sincerely held belief, which is markedly different than Lt. Poffenbarger's request.

Elizabeth Brehm (PHV forthcoming)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

/s/Zach Gottesman_____
Zach Gottesman (OH 0058675)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon each Defendant at their addresses (and the United States by service upon the U.S. Attorney and U.S. Attorney General), by priority U.S. mail, as well by CM/ECF, this 2 day of January, 2022.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)