**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Dayton Division**

| | | |
|---|---|---|
| **MICHAEL POFFENBARGER** | : | Case No.: 3:22-cv-00001 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, by and through Counsel, provides this Reply in Support of his Motion for Preliminary Injunction. Contrary to Defendants' (collectively referred to as "the Government" for purposes of this Reply) false framing of the issues, this Motion is not about how the purported efficacy of forced COVID-19 vaccinations lawfully burdens the free exercise of religious belief within the military. If it were, then Defendants' own proof, which acknowledges the reliable, scientific evidence that prior infection, which Lt. Poffenbarger had, likely provides a thirteen-fold higher rate of protection for breakthrough or reinfection than vaccination alone, would conclusively demonstrate Defendants cannot meet their burden of proof in this case. Nor is this Motion about whether the Government can impose vaccine mandates generally.

Rather, this Motion is about whether the Government can grant medical and administrative exemptions to its mandate while simultaneously, and without lawful excuse, systemically deny

1

religious exemptions.[1] In other words, the Government's own evidence is that it systemically discriminates against the exercise of religion where it admittedly prefers medical and administrative exemptions instead of all religious exemptions. Under the First Amendment, and RFRA, this kind of governmental accommodation of secular concerns over all religious belief cannot stand.

### A. <u>Additional Facts</u>

Before turning to the Government's arguments, some additional facts bear mentioning.  In related litigation,[2] the Government submitted the Declaration of Colonel Jason Holbrook, a copy of which we attach to this Reply.[3] Colonel Holbrook[4] reports that the Air Force received 12,623 requests for religious exemption, had 2,378 still under review, approved eight, denied 3,180, denied 443 appeals, and approved a single appeal.  [Dec. Holbrook].  Meanwhile, 1,513 medical exemptions and 2,314 administrative exemptions have been approved. *Id.*

Also, as part of its Response in this case, the Government submitted the Declaration of Colonel James Poel. In it, Colonel Poel admits that the Government is deliberately engaged in the systemic denial of religious exemptions because, he contends, they must be in order to accommodate medical and administrative exemptions. [Declaration Poel, DE#22-19 at PageID#985, ¶ 7]. This is despite the fact that Colonel Poel admits that the "necessity" supporting

---

[1] Defendants feign confusion about what is requested.  To be crystal clear: Plaintiff respectfully requests that the Government grant his exemption and cease its illegal religious discrimination against him.  More broadly, he seeks relief that would extend exemption status to all Air Force members who have requested religious accommodations from the Air Force's vaccine requirement, and who have demonstrated, and/or who the Air Force has determined to have, sincerely held religious beliefs.  Addressed below is the scope of requested injunctive relief.

[2] *See NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429.

[3] None of this should be a surprise to the Government, as it was the party that submitted the declaration.

[4] Holbrook Declaration, 8:21-cv-02429, February 7, 2022, ECF No. 76-1.

forced vaccinations of previously infected and recovered airmen like Lt. Poffenbarger is belied by scientific proof that previous infection likely provides thirteen times greater protection against reinfection or breakthrough infection than vaccination alone. *Id.* at PageID#993-994, ¶24. Colonel Poel suggests that the number of vaccination exemptions are a zero-sum game (but fails to explain why that is so), and likewise erroneously suggests that people like Lt. Poffenbarger, who have natural immunity, have greater protection if they are also vaccinated. That may be so, but it ignores the fact that the Air Force is not requiring its airmen to become infected and vaccinated to have this robust immunity.

Ultimately, Colonel Poel gives the game away when he admits the "studies vary" behind trying to determine whether reinfection rates are equivalent, lower, or higher between those who have overcome prior infection and those who are "fully vaccinated." *Id.* at PageID#993, ¶24. However, and if true, then it is the Government that cannot meet its burden in this case of establishing a compelling interest allowing them to impede on religious liberty through less restrictive means. In fact, the Government's bad faith is amply demonstrated when Colonel Poel argues that studies from the UK and Israel, two countries with some of the highest rates of vaccination in the world, show that "herd immunity" is not a realistic basis upon which to allow Lt. Poffenbarger to obtain a religious exemption, rather than an acknowledge the futility of mass vaccination in light of emerging variants. *Id.* at PageID#998, ¶29.

### B.  Standard For Preliminary Injunction

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest

would be served by issuance.  *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

In its Response, the Government seems to suggest that some other heightened standard applies, but it does not.  In this Circuit, when it comes to constitutional rights, the above standard is the relevant standard.  Recent case law makes this clear.

In fact, Sixth Circuit law clearly establishes that where constitutional rights are infringed, the likelihood of success factor is dispositive and the remaining factors are met. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). *See, also, Elrod v. Burns*, 427 U. S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

U.S. Supreme Court precedent supports applying the same injunction standard to RFRA claims as to constitutional claims, viz., a collapsing of the standards when the government is the defendant and looking primarily at the likelihood of success on the merits. *Holt v. Hobbs*, 574 U.S.

352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Sixth Circuit precedent clearly supports the same collapsed analysis. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (analyzing identical Kentucky RFRA statute and noting that the issues collapse under RFRA).

### C.  Plaintiff's RFRA and Free Exercise Claims are Likely to Succeed on the Merits

Given there is no dispute that Lt. Poffenbarger possesses a sincerely held religious belief, nor is there any dispute that the Government's mandate substantially burdens his belief,[5] we turn next to whether the government has a compelling interest and uses the least restrictive means of furthering that compelling government interest.[6]

The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored. Similarly, RFRA requires the same narrow tailoring.  42 U.S.C. 2000bb–1.  "[N]arrow tailoring **requires the government to show** that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-1297 (2021) (emphasis added). "Where the government permits other activities to proceed with precautions [as the Air Force does here], **it must show** that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.*

---

[5] *See, also*, DE#1-3, ¶2, PageID#20 ("I do not doubt the sincerity of your beliefs."); DE#1-5 (not questioning the sincerity of the belief).

[6] Religious Freedom Restoration Act of 1993, Pub. L. 103-141, Nov. 16, 1993, 107 Stat. 1488 (42 U.S.C. 2000bb *et seq.*).

(Emphasis added). "Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.*

Sifting through all its proof compels the conclusion that the Government wholly fails to meet its burden under *Tandon.* At no point in its submissions does the Government prove that a military member who does not receive a vaccine due to a religious objection is a greater risk to the military mission than someone who does not receive a vaccine due to a medical or administrative reason. Logically, the Government could never meet this burden as the risks would always be the same.[7] "Risks of contagion turn on [the failure to receive the vaccine]; the virus does not care why they [did not do so].  So long as that is the case, why do the orders permit people who [have medical or administrative exemptions to avoid the requirement, but not permit religious exemptions]"? *Maryville*, 957 F.3d 610, 615.

In other words, the Government's unsupported assertion that its vaccine requirement complies with RFRA and the First Amendment is just that: unsupported. As noted, its own proof establishes the contrary conclusion. Sixth Circuit precedent precludes the Government from merely saying that no religious exemptions can be accommodated because vaccinations of all personnel are a compelling necessity. Instead, the Government must prove why its granting of thousands of medical or administrative exemptions, and merely a handful of belated, suspect,[8]

---

[7] *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67, Order for Temporary Restraining Order; ("The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence)").

[8] We do not mean suspect in the context that the exemptions are not warranted, but rather mean suspect in the context that these exemptions came after litigation in multiple forums, after the entry of a temporary restraining order in the Middle District of Florida that excoriated the Government for its discrimination (*NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67), and, upon information and belief, were like the handful of Marine Corps

religious exemptions, is something other than its preference of secular concerns over all religious concerns (which is what Colonel Poel admits is the case, Declaration Poel, DE#22-19 at PageID#985, ¶ 7). *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021).

Given the Government's burden of proof, the Court should require the Government to address, by way of evidence, the context of the mere handful (0.07% of those requested) religious exemptions that it has granted, and the context of the medical or administrative exemptions that it has granted (i.e. to whom, what their job duties were, etc.). Recognizing the relevance of this information, the District Court in the Middle District of Florida litigation directed the Government to do exactly that by February 16, 2022. *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#90 (attached). But absent such a comparison, the Government cannot meet its burden, and injunctive relief should be granted.

In *Dahl*, as here, the defendant "requires [persons] to be vaccinated against COVID-19, but it considers individual requests for medical and religious exemptions on a discretionary basis. [Plaintiff] applied for religious exemptions. The [defendants] ignored or denied their requests…" *Id.* And, to be clear, in *Dahl*, it was not even the denial of an educational benefit, a scholarship, or even membership on a particular sport team but, instead, merely the denial of participation in team sport activities. *Id.* In contrast, the consequences to Lt. Poffenbarger are far more severe.

As for any argument by the Government that Lt. Poffenbarger does not have a right to continuation in the service of this nation or that his transfer to the Individual Ready Reserve isn't punitive or even a big deal, we respond by quoting the Sixth Circuit: "[a] party may mount a free exercise challenge, it bears noting, even where it does not have a constitutional right to the benefit

---

exemptions that were granted but later turned out to be service members that were at the end of their terms of service.

7

it alleges is being improperly denied or impaired." *Id.* at 731-732. That is because "a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights." *Id.* at 731, quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021). Further, as here, where the Government "extends discretionary exemptions to a policy, **it must grant exemptions** for cases of 'religious hardship' **or present compelling reasons not to do so**."  15 F.4th 728, 731 (Emphasis added).

In *Dahl*, the governmental actor at least made the argument that it also refused to grant *any* medical exemptions (as noted, and unlike in *Dahl*, the Air Force has granted thousands of medical and administrative exemptions to its policy). But even that was not sufficient to avoid triggering strict scrutiny. *Id.* at 734-735. And in terms of strict scrutiny, and whether the *Dahl* defendants could meet it, the Sixth Circuit found significant that others either were not subject to, **or were exempt from**, the vaccination policy. *Id.* at 735. So too here. The Air Force has approved, as of February, 2022, at least 1,513 medical exemptions and 2,314 administrative exemptions. [Declaration Holbrook].

In *Dahl*, the defendants also presented the district court with "an affidavit stating that COVID-19 vaccines are 'the most effective and reasonable way to guard against' the virus." *Dahl* 15 F.4th 728, at 735 (In contrast, here the Government concedes that "studies vary". [Declaration Poel, DE#22-19 at PageID#993, ¶24].)  However, for purposes of its ruling, the Sixth Circuit did not "dispute that assessment." *Id.*  Nevertheless, it found that "the question before us 'is not whether the [defendant] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exception' to plaintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Id.*  That is precisely the issue here.

8

The granting of thousands of medical or administrative exemptions while denying all but a handful of religious exemptions (and those only at the eleventh hour, apparently prompted by litigation), and the continuation of a sham process of purporting to legitimately consider these religious exemptions is a stunning admission and is dispositive of the Government's failure to meet the requirements of RFRA and the First Amendment. *Maryville Baptist Church*, 957 F.3d 610 at 614-615; *Roberts*, 958 F.3d 409, 413-415; *Fulton*, 141 S. Ct. 1868, 1882 (the government has no "compelling reason why it has a particular interest in denying an exception to [plaintiff] while making them available to others."). The Government's own proof is nothing more than an acknowledgment of official discrimination against religious exercise so as maximize the protection of other concerns. [Declaration Poel, DE#22-19 at PageID#985, ¶ 7]. This alone warrants granting relief to Lt. Poffenbarger (and others) who are being subjected to this unlawful discrimination.

The fact that thousands of exceptions have been granted for medical and administrative reasons, on a case-by-case basis, establishes that strict scrutiny is warranted under *Maryville*, *Roberts*, and *Fulton*. The fact that a mere handful of suspect religious exemptions have been or will be granted establishes that the Government cannot pass that strict scrutiny test. The United States Supreme Court has made clear that a policy is not neutral and generally applicable "whenever [it] treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. 1294, 1296 (emphasis in original). The granting of *any* secular exemptions from the vaccination policy for secular reasons, no matter how appropriate or warranted (including for severe medical reactions to the vaccine), treats "*any* comparable secular activity more favorably than religious exercise," and triggers strict scrutiny. *Id.*

It would be one thing for the Government to come to this Court having granted absolutely no medical or administrative exemptions. That would present a closer question on the issue of

narrow tailoring and less restrictive means – and would provide some logic to the Government's arguments that it could not accomplish its interests by any accommodation of religious liberty interests whatsoever (or at least would demonstrate that the Government discriminated on a consistent basis, not solely against protected religious expression). But that is not the case here.

Here, the fact that the Government has already granted thousands of administrative and medical exemptions **undercuts any logical argument** that the least restrictive means requires that no religious exemptions be granted. As noted, recent U.S. Supreme Court precedent forecloses that possibility anyway where secular exemptions have been granted from the same policy where religious accommodation is being denied. *Fulton*, 141 S. Ct. 1868, 1882.

In light of the record evidence of the Government granting thousands of administrative or medical exemptions from its vaccine requirement, but only a handful of eleventh-hour religious exemptions, a thorough analysis of other potentially less restrictive measures is neither necessary, nor even warranted. The Government's action of permitting purely secular exceptions to its mandate is an admission that: 1) it does not believe that no exceptions can be granted, and 2) less restrictive means to accomplish the Government's claimed interest are available, it simply refuses to apply them to religious believers. Simply put, the Government, admittedly, can and should treat those with a valid religious objection to the vaccine the same way it treats those with a valid medical or administrative accommodation request. So far, it has chosen not to.

Defendants substantially burdened Plaintiff's religious exercise while failing to demonstrate that doing so is necessary to achieve a compelling governmental interest. 42 U.S.C. §2000bb–1(b). Instead, the Government illogically argues that because Plaintiff performs duties in a career field that requires interaction, the compelling government interest is to achieve 100% vaccination compliance for the sake of overall health and safety. This is despite its

acknowledgment of the science supporting the efficacy of natural immunity and seemingly does not apply when it grants any one of thousands of medical or administrative exemptions resulting in less than 100% compliance. Thankfully, this Court is not bound by the Government's illogic. "[R]ather than rely on 'broadly formulated interests,' courts must 'scrutinize the asserted harm of granting specific exemptions to particular religious claimants.'" *Fulton,* 141 S. Ct. 1868, 1881 (2021) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S.418, 431 (2006)).

Defendants fail to demonstrate that compulsory vaccination is the least restrictive means of achieving their compelling government interest, particularly where they have granted thousands of exemptions to their policy for medical and administrative reasons, but only a handful of eleventh-hour exemptions for religious reasons. It is undisputed that Plaintiff is willing to adhere to numerous longstanding mitigation measures such as masking, teleworking, and social distancing, as well as reasonable COVID-19 screening testing that is presently advertised as an acceptable alternative to vaccination by the Department of Defense, and that was used for the entirety of the pandemic before vaccines were even available.

Defendants scoff at and/or outright reject these mitigation measures (except for masking, which they continue to require), but before the rollout of vaccines, these measures were used successfully throughout the pandemic by ***Defendants*** as they carried on their normal responsibilities. Now, during a time when, admittedly, vaccine effectiveness is waning, such measures should not be foreclosed, and would certainly be a less restrictive means of reducing transmission of COVID-19 than requiring Plaintiff, someone who has natural immunity, to violate his deeply held beliefs. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton,* 141 S. Ct. at 1881.

Defendants also fail to explain **why they delayed imposing their mandate for eleven months in the face of a supposed compelling necessity**. Defendants' casual response to Plaintiff's arguments against any true compelling necessity ignores that substantial delays in imposing a vaccine mandate fatally undermine the government's asserted justification. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 611 & n.10–11 (5th Cir. 2021).

Next, Defendants illogically contend they have a compelling necessity to create a crisis of conscience, even for those service members who have recovered from COVID-19 infection and developed natural antibodies, because they claim there is insufficient data concerning natural immunity, and that studies vary.  [DE#22 at p.36].  Perhaps Defendants make this argument because they must concede the reliable scientific data establishing that prior infection is likely thirteen times more effective than vaccination alone in preventing reinfection and/or breakthrough infection.[9] This is consistent with recent CDC findings that support the efficacy of prior infection in preventing reinfection.[10] However, all of their cited "data" only proves that Defendants cannot meet their burden of proving a "compelling necessity" when the data, admittedly, is conflicting. Instead, the fact the Air Force continues to approve medical and administrative exemptions while refusing to accommodate all but a handful of religious exemptions simply establishes that Defendants are enforcing the vaccine mandate in an arbitrary and capricious manner.  *Id.*

Defendants also utterly fail to explain how their rejection of natural immunity as a substitute for the COVID vaccination squares with their acceptance of the Johnson & Johnson vaccine, which during clinical trials – before the rise of the Delta and Omicron variants – proved only 66.3%

---

[9] https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1 (last visited 2/12/22).

[10]  https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w#contribAff (last visited 2/11/2022).

effective in preventing infection.[11]  The J&J shot now produces "virtually no antibody protection against the omicron coronavirus variant."[12] **Yet remaining unexplained is why the J&J vaccine still fulfills the Air Force's vaccination requirement**, **while natural immunity does not**.

Finally, Defendants' fallback argument that discrimination against religious exercise is permitted in the military – or at least accorded a more deferential First Amendment review than strict scrutiny – is meritless. Contrary to their unsupported assertion, multiple courts have applied strict First Amendment scrutiny to military regulations and actions that burden the free exercise of religion – including the Sixth Circuit Court of Appeals. *See, e.g.*, *Hartmann v. Stone*, 68 F.3d 973, 978–79 (6th Cir. 1995) (applying *Lukumi* standard to Army regulation that prohibited religious practices by on-base family childcare providers); *accord Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) (applying the *Lukumi* standard to Army's refusal to accommodate Sikh religious practices); *Adair*, 183 F. Supp. 2d at 53 (applying the *Lukumi* standard to free exercise claim by chaplains against the Navy).

These decisions align with the Supreme Court's categorically clear instruction that "[t]he principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

Finally, this Court would not be the first to find a violation of federal law and the Constitution given the military's third-class treatment of religious accommodation requests.

---

[11]   https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html   (last visited 2/11/2022).

[12]   https://www.biorxiv.org/content/10.1101/2021.12.14.472719v1.full.pdf   (last   visited 2/11/2022).

Federal courts in Florida and Texas have already done so, and we attach their decisions to that effect. *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67; *US Navy SEALs 1-26 et al v Biden et. al.*, NDTX, 4:21-cv-01236, DE#66; DE#116.

### D.  Plaintiff Faces Irreparable Harm

Incredibly, the Government claims there is no irreparable harm. But there is never an adequate remedy at law for even a brief deprivation of religious liberty rights. The Sixth Circuit has been clear that violations of First Amendment and RFRA rights satisfy the irreparable harm requirement. *Maryville Baptist Church, Inc.*, 957 F.3d 610, 615-616 (finding restriction that burdened religion "assuredly inflicts irreparable harm"); *Autocam Corp. v. Sebelius*, 2012 U.S. App. LEXIS 26736 (6th Cir. 2012) (same); *Catholic Diocese of Nashville v. Sebelius*, 2013 U.S. App. LEXIS 25936 (6th Cir. 2013) (same); *Roberts*, 958 F.3d 409, 416 (restriction "assuredly inflicts irreparable harm by prohibiting them from worshiping how they wish").  Unquestionably, the loss of First Amendment freedoms, for even minimal periods of time, "constitutes irreparable injury." *Elrod*, 427 U.S. at 373. The Supreme Court recently echoed this in the context of religious liberty, finding that burdens on Free Exercise rights "for even minimal periods of time" constitute irreparable harm. *Tandon*, 141 S. Ct. 1294, 1297.

Other Circuits are in accord. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("[C]ourts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA.")); *accord DeOtte v. Azar*, 393 F. Supp. 3d 490, 511 (N.D. Tex. 2019). And as Justices Gorsuch and Alito recently agreed, the *threat* of loss of employment and unemployment benefits and the deprivation of religious liberty rights each satisfy the irreparable harm prong of the preliminary-

14

injunction standard. *Dr.A*, 2021 WL 5873126, at *3 (Gorsuch, J., dissenting from the denial of application for injunctive relief).

Also, Defendants' mandate causes irreparable harm because of its coercive effect, which forces a "crisis of conscience" that is itself a harm for the religious objector. As Judge Ho said, "it is a quintessentially irreparable injury, warranting preliminary injunctive relief." *Sambrano v. United Airlines, Inc.*, 2021 U.S. App. LEXIS 36679 (5th Cir. 2021) (Ho, J., dissenting from denial of injunction pending appeal). "It is difficult to imagine how a crisis of conscience, whether instigated by government or industry, could be remedied by an award of monetary damages." *Id.* at *3.

In the Government's response to Lt. Poffenbarger's motion, they casually claim that Lt. Poffenbarger's transfer to the Individual Ready Reserve and his loss of health care does not constitute irreparable harm. *See* Defs. Opposition, Doc. No. 22, PageID 330. Then then go further to portend that the "contention is meritless, as military administrative and **disciplinary actions**, including separation, are not irreparable injuries because the service member could later be reinstated and provide back pay if he prevailed on his claim." *Id.* However, the Government should note that their statements violate their own policy and regulations. Department of the Air Force Instruction 52-201, paragraph 2.7, states that "If, after a thorough analysis of the above facts, the religious accommodation of Airmen or Guardian cannot be met, administrative actions that may be considered include reassignment, reclassification, or voluntary separation."[13] Also see, Department of Defense Instruction 1300.17 where it states, "**[A]n expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be**

---

[13] Department of the Air Force Instruction 52-201, paragraph 2.7, June 23, 2021. Available at https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf (last visited 2/12/2022).

**used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.**"[14]   Nowhere does it state that an Airman, such as Lt. Poffenbarger or those in a similar situation, should be given a letter of reprimand that will be filed in his official military personnel records, nor harmed (the Government calls them the "potential range of disciplinary consequences…") by taking away his pay and his ability to work in the Air Force. *Id.* When drafting current policy and regulations, it is clear the intent was not to punish or discipline Airmen and service members whose requests for religious accommodation were denied. The intent of the instruction was to look for other ways to accommodate the Airman's or service members' religious exercise without the use of a "disciplinary consequence." *Id.* The Air Force in particular has instead turned this religious accommodation request process into an eradication of religious believers in its ranks.

### E.  The Equities and Public Interest Warrant the Issuance of Relief

As Plaintiff has already noted, these factors usually collapse when we deal with the Government's violation of statutory and constitutional law. To be sure, the Sixth Circuit is clear there can be no harm to others as a result of granting an exception for religious liberty when the Government already allows secular exceptions to its policy, and those secular exceptions impose similar risks. *Roberts*, 958 F.3d 409, 416. But even more than that, and cutting against harm to others (and harm that the Government alleges it will suffer without continuing to discriminate on the basis of religious belief) is the fact that: 1) the Government and Air Force successfully operated without these mandates for over a year into the pandemic; 2) the Air Force has already achieved an over 95% vaccination rate, belying any claims that granting a religious exemption to a few airmen could harm its mission where it already accommodates thousands of medical and

---

[14] *Id.* at ¶ 1.2 e.

administrative exemptions; and 3) other mitigation measures exist, and previously were implemented by Defendants themselves with no small degree of success. All of this cuts against harm to others.

As for the final factor, the public interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999).

In response, Defendants misleadingly assert that this Court "must 'give great deference' to the 'professional military judgments' of [military] leaders when it comes to what is needed to ensure military readiness." Quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)). But the quotation is seriously misleading where *Winter* involved balancing the potential harm to marine mammals against the Navy's ability to continue conducting sonar training. Simply put, there were no constitutional rights at issue. Consequently, nothing in *Winter* suggests that the deference given to the military in allowing sonar training despite speculative harm to marine mammals, harm that had not been documented in 40 previous years of training, should apply when the countervailing interest is an actual violation of a constitutionally protected right. *Winter* itself noted that "military interests do not always trump other considerations." 555 U.S. at 26.

Finally, and perhaps most tellingly, Defendants' own bad faith belies any necessity to defer to their judgment that their vaccination mandate must immediately be enforced upon Lt. Poffenbarger. For months, Defendants stayed the most significant enforcement consequences of their unconstitutional mandate to permit airmen to go through the Potemkin[15] exercise of seeking never-to-be-granted religious exemptions. Consequently, the question needs to be asked: if this

---

[15] Potemkin villages were erected as façades in Russia and were false and illusory. *Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1561, fn. 22 (D. Az. 1997). It is an adequate descriptor of the Government's consideration of religious exemptions.

requirement is such that 100% compliance must be achieved immediately for critical military objectives, why wouldn't the Government simply announce there would be no religious exemptions (unless you are about to separate from the service anyways) rather than staying its hand to process illusory efforts at never-to-be-granted religious exemptions?  To pose the question is to answer the question.

### F. The Scope of the Relief Should Track the Scope of the Constitutional and Statutory Violations

The violation of RFRA and the First Amendment by Defendants is not limited to Lt. Poffenbarger. The record evidence is unmistakable that Defendants have a general policy of evaluating medical and administrative exemptions with a clear-eyed view, case by case review of whether they are appropriate, while simultaneously engaging in an overwhelming denial of all religious exemptions.

In *Califano v. Yamasake*, 442 U.S. 682 (1979), the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." Indeed, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam); *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

A preliminary injunction should be granted to Lt. Poffenbarger, and not only as to him, but to the entirety of those in the Air Force's religious exemption process whose beliefs have been found to be sincere, as well as those who have already had their requests denied despite their sincerely held beliefs. The alternative, which is to force to Court thousands of parallel RFRA cases,

18

on almost identical facts, using identical law, is likely to be a serious misuse of Court and government resources.[16]

In 2020, when the Governor of Kentucky engaged in a widespread violation of religious freedom, as the Air Force does here, the Sixth Circuit extended relief to the scope of the violation, and issued a blanket injunction against the continued enforcement of unconstitutional orders statewide – it was not limited to the named Plaintiffs. *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).

As it stands, the Government continues to violate the Constitutional rights of numerous airmen, and the relief should extend to the scope of its violation. In the alternative, an injunction should extend to all such airmen stationed in Ohio, or have as their Home of Record an address in Ohio.

### C. Conclusion

Plaintiff's request for a preliminary injunction should be granted.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (PHV filed)
Elizabeth Brehm (PHV filed)
Wendy Cox (PHV filed)

---

[16] The undersigned have been contacted, and retained, by a number of Air Force members who are similarly situated. We can file these matters piecemeal, but doing so is not likely a productive use of government and court (and the undersigned's) resources.

200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

/s/Thomas Bruns
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLP
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Zach Gottesman
Zach Gottesman (OH 0058675)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 14 day of February, 2022.

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)