# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **U.S. NAVY SEALs 1-26, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-01236-O** |
| | § | |
| **JOSEPH R. BIDEN, JR., et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER ON PRELIMINARY INJUNCTION</u>

Our nation asks the men and women in our military to serve, suffer, and sacrifice. But we do not ask them to lay aside their citizenry and give up the very rights they have sworn to protect.[1] Every president since the signing of the Religious Freedom Restoration Act has praised the men and women of the military for their bravery and service in protecting the freedoms this country guarantees.[2]

In this case, members of the military seek protection under those very freedoms. Thirty-five Navy Special Warfare servicemembers allege that the military's mandatory vaccination policy violates their religious freedoms under the First Amendment and Religious Freedom Restoration Act. The Navy provides a religious accommodation process, but by all accounts, it is theater. The Navy has not granted a religious exemption to any vaccine in recent memory. It merely rubber stamps each denial. The Navy servicemembers in this case seek to vindicate the very freedoms

---

[1] George Washington wrote in 1775 that "When we assumed the Soldier, we did not lay aside the Citizen." Those words are carved into the marble of the Memorial Amphitheater in the Arlington National Cemetery.
[2] See President William Clinton, Remarks at the Veterans Day National Ceremony (Nov. 11, 1999); President George W. Bush, Remarks at the Veterans Day Proclamation (Oct. 30, 2001); President Barack Obama, Remarks at the Veterans Day National Ceremony (Nov. 11, 2009); President Donald Trump, Remarks at the New York City Veterans Day Parade Address (Nov. 11, 2019); President Joseph Biden, Remarks at the National Veterans Day Observance (Nov. 11, 2021).

they have sacrificed so much to protect.[3] The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution.

Having considered the briefing, oral argument, relevant facts, and applicable law, the Court concludes that Plaintiffs' Motion for Preliminary Injunction should be and is hereby **GRANTED**.

## I.      BACKGROUND

This case arises from the United States Navy's mandatory COVID-19 vaccination policy. Plaintiffs are thirty-five Navy Special Warfare servicemembers, including SEALs, Special Warfare Combatant Craft Crewmen, Navy Divers, and an Explosive Ordinance Disposal Technician. Compl. 1, 8–9, ECF No. 1. Together, they sue President Biden, Secretary of Defense Austin, Secretary of the Navy Del Toro, and the United States Department of Defense.

### A.      Factual Background

### 1.  The Navy's Vaccination Policy

In August 2021, the Department of Defense ("DoD") issued a vaccine mandate directing all DoD servicemembers to be vaccinated against COVID-19. Pls.' App. 146–47, ECF No. 17. The Department of the Navy also implemented its own mandate requiring all active-duty Navy servicemembers to be fully vaccinated before November 28 or face the "full range" of disciplinary action. Pls.' App. 149–50, ECF No. 17. For servicemembers assigned to Special Operations duty, the Navy's vaccination policy reads:

> [Special Operations] personnel refusing to receive recommended vaccines . . . based solely on personal or religious beliefs are disqualified. This provision does not pertain to medical contraindications or allergies to vaccine administration.

---

[3] Before the Court are the Plaintiffs' Motion for Preliminary Injunction (ECF No. 15), filed November 24, 2021; Defendants' Response (ECF No. 43), filed December 10; and Plaintiffs' Reply (ECF No. 58), filed December 17. The Court held a hearing on the matter on December 20. ECF No. 61.

Manual of the Medical Department ("MANMED") § 15-105(3)(n)(9); Pls.' App. 838, ECF No. 17. In addition to those with medical exemptions, "[m]embers who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination" until the trial concludes. Pls.' App. 149–50, ECF No. 17.

For those with pending religious exemption requests, being "disqualified" means becoming permanently nondeployable.[4] Unlike those with medical exemptions and allergies to the vaccine, an unvaccinated servicemember seeking a religious exemption (the "religious servicemember") continues to be nondeployable, even if he receives the accommodation he requests. Pls.' App. 159, 838 (Trident Order 12 – Mandatory Vaccination for COVID-19), ECF No. 17. To regain his "deployable" status, the religious servicemember must first receive his religious accommodation, *and then* seek a medical waiver under the Navy's MANMED. Defs.' App. 278, ECF No. 44-3.

Each of these steps, by themselves, is monumental. Religious exemptions to the vaccine requirement are virtually non-existent. In the past seven years, the Navy has not granted a religious exemption to any vaccine requirement. Pls.' App. 295, ECF No. 17.

### 2. Plaintiffs' Religious Accommodations Requests

By early November, 99.4% of active-duty Navy servicemembers had been fully vaccinated against COVID-19. Pls.' App. 284, ECF No. 17. Plaintiffs are part of the remaining 0.6%. Representing the Catholic, Eastern Orthodox, and Protestant branches of Christianity, Plaintiffs object to receiving the COVID-19 vaccine based on their religious beliefs. *Id.* These beliefs fall into the following categories: (1) opposition to abortion and the use of aborted fetal cell lines in

---

[4] *See* Decl. of SEALs 1–19, 21–26, Pls.' App. 870–980; Decl. of SWCC 1–5, App. 981–1003; Decl. of EOD 1, App. 1016–22; Decl. of ND 1–3, App. 1004–15.

development of the vaccine;[5] (2) belief that modifying one's body is an afront to the Creator;[6] (3) direct, divine instruction not to receive the vaccine;[7] and (4) opposition to injecting trace amounts of animal cells into one's body.[8] Plaintiffs' beliefs about the vaccine are undisputedly sincere, and it is not the role of this Court to determine their truthfulness or accuracy. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 478 (5th Cir. 2014) (citing *United States v. Ballard*, 322 U.S. 78, 86 (1944)).

Plaintiffs filed their religious accommodation requests as early as August and as late as December. *See* Supp. Decl. of SEALs, SWCC, EOD, ND, Supp. App. 1023–1134. In many cases, the Plaintiffs' commanding officers recommended their requests be approved. *See* Supp. Decl. of SEAL 18, Supp. App. 1075; Hr'g Test. of SEAL 3. Even so, as of December 17, the Navy has summarily denied at least twenty-nine of the thirty-five accommodations requests, the majority of which have been appealed. Supp. Decl. of SEALs, SWCC, EOD, ND, Supp. App. 1023–1134. The Navy has made no final determinations on appeal.

To adjudicate a religious accommodation request, the Navy uses a six-phase, fifty-step process. *See* Supp. Decl. of Andrew Stephens, Ex. 1, ECF No. 62. Although "all requests for accommodation of religious practices are assessed on a case-by-case basis," Phase 1 of the Navy guidance document instructs an administrator to update a *prepared* disapproval template with the requester's name and rank. *Id.* Based on this boilerplate rejection, Plaintiffs believe that this process is "pre-determined" and sidesteps the individualized review required by law. *Id.*

---

[5] *See* Decl. of SEALs 1–3, 5, 6, 8–15, 17–19, 21–24, 26, App. 871–84, 890–97, 903–37, 944–72, 978–80; Decl. of SWCC 1–4, App. 981–1003; Decl. of EOD 1, App. 1016–22; Decl. of ND 2, App. 1009–11.
[6] *See* Decl. of SEAL 5, 9–11, 13–15, 18, 22, 25, 26, App. 890–93, 909–20, 926–37, 948–51, 961–64, 974–80; Decl. of SWCC 1, 5, App. 982–85, 1000–03; Decl. of EOD 1, App. 1016–22; Decl. of ND 1, 3, App. 1004–07, 1013–15.
[7] *See* Decl. of SEAL 7 and 19, App. 899–900, 954.
[8] *See* Decl. of SEAL 13, App. 927; Decl. of EOD 1, App. 1018.

### B.     Procedural History

On November 9, 2021, Plaintiffs filed this lawsuit challenging the Navy's vaccination mandate. *See* Compl. 38, ECF No. 1. In response to the Court's order for a status report, Plaintiffs filed their Motion for Preliminary Injunction (ECF No. 15), on November 24, 2021. Defendants responded on December 10. *See* Defs.' Resp., ECF No. 43. Plaintiffs filed their reply December 17. *See* Pls.' Reply, ECF No. 58. The parties presented evidence and arguments before the Court in a hearing on December 20. *See* ECF No. 61. Accordingly, the Motion is now ripe for the Court's review.

## II.     LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The Court may issue a preliminary injunction if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movants' favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *See Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also* Fed. R. Civ. P. 65. "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

The movants must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light*, 760 F.2d at 621. "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979) (per curiam).

### III.    ANALYSIS

Plaintiffs ask the Court to enjoin Defendants from enforcing the vaccination policy, which they say violates RFRA and the First Amendment. Mot. 2, ECF No. 15; Pls.' Br. 2, ECF No. 16. They also assert that the Defendants' permanent medical-disqualification policy fails strict scrutiny. Defendants contend that Plaintiffs have not exhausted their intra-military remedies and that their claims are nonjusticiable. Even if these claims are reviewable, Defendants argue, a preliminary injunction would be inappropriate, because Plaintiffs are unlikely to succeed on the merits of their claims.

### A.   Jurisdiction and Reviewability

There are two threshold questions before the Court. The first is whether this Court has jurisdiction over the parties, and the second is whether Plaintiffs' claims are justiciable under the *Mindes* test.

### 1.   Relief Against President

Citing *Newdow v. Roberts*, Defendants argue this Court lacks jurisdiction to enjoin the President. 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him and have never submitted the President to declaratory relief." (citation omitted)). "[W]e cannot issue a declaratory judgment against the President. It is incompatible with his constitutional position that he be compelled personally to defend his executive actions before a court." *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part). Defendants are correct. This Court has no declaratory or injunctive power against President Biden, and he is therefore **DISMISSED** as party to this case.

### 2.   Justiciability Under *Mindes*

Defendants also argue that this case is nonjusticiable because Plaintiffs have not exhausted military remedies, and because they seek to have the Court intrude on internal military affairs. All

6

Plaintiffs have submitted religious accommodation requests. The Navy has denied twenty-nine of those requests. It has granted none. Defendants say the Court must wait for the Navy to decide each request.

As explained below, the record indicates the denial of each request is predetermined. As a result, Plaintiffs need not wait for the Navy to engage in an empty formality. In addition, whether the vaccine mandate violates Plaintiffs' First Amendment rights is a legal question well suited for the courts, not the Navy's administrative process. The Court finds that exhaustion is futile and will not provide complete relief, and therefore the case is justiciable.

Generally, courts refrain from reviewing internal military affairs. The rationale is simple: "[J]udges are not given the task of running the Army," or, in this case, the Navy. *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). Some military issues, however, are appropriate for judicial review. The Fifth Circuit has developed a test to determine whether a given military issue is justiciable, and appropriate for judicial review. That test first requires plaintiffs to pass a two-part threshold test by showing (1) "an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations," and (2) "exhaustion of available intraservice corrective measures." *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). Then, if both criteria are met, the Court weighs four factors to determine whether the issue is justiciable: (1) the nature and strength of the plaintiffs' challenge; (2) the potential injury to the plaintiffs if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Id.* at 201–02.

Before applying the *Mindes* test, the Court addresses Plaintiffs' argument that *Mindes* does not apply to RFRA. Plaintiffs suggest that applying *Mindes* here effectively reads an exhaustion

requirement into RFRA. *See* Pls.' Reply 7–8, ECF No. 58. Plaintiffs confuse statutory exhaustion

and judge-made exhaustion. When a statute imposes an exhaustion requirement, "Congress sets

the rules." *Ross v. Blake*, 578 U.S. 632, 639 (2016). Courts simply apply the text. They may not

"add unwritten limits" or exceptions to the statute's "rigorous textual requirements." *Id.* If RFRA

had an exhaustion requirement, the Court would apply it. But "judge-made exhaustion doctrines,"

such as *Mindes*, are different. *Id.* The military exhaustion requirement in *Mindes* is a longstanding

prudential doctrine that applies to constitutional, statutory, and regulatory claims involving "an

'internal military decision.'" *Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 340 (5th Cir.

2000). The out-of-circuit cases Plaintiffs cite are unpersuasive. They discuss whether RFRA

requires exhaustion,[9] or whether certain RFRA claims satisfy prudential ripeness analysis.[10] They

do not analyze whether *Mindes*, a "judicial abstention doctrine" for military issues, applies to

RFRA. *Id.* at 339. Plaintiffs challenge internal military decisions, so, in this Circuit, the Court must

apply *Mindes*.

### a. The Two-Part Threshold Test

Having determined that *Mindes* applies, the Court turns to the two-part threshold test.

Defendants agree that Plaintiffs satisfy the first part—they have alleged deprivation of their First

Amendment rights and violations under RFRA. *See* Defs.' Resp. 24, ECF No. 43. The parties

dispute the second part—whether Plaintiffs have exhausted their military remedies.

The military exhaustion requirement is like other judge-made exhaustion doctrines. "The

major purpose of the exhaustion doctrine is to prevent the courts from interfering with the

---

[9] *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) ("RFRA certainly provides no textual support
for the defendants' position that the plaintiff is required to exhaust administrative remedies . . . .").
[10] *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (declining
"to read an exhaustion requirement into RFRA" for free exercise claims against the Drug Enforcement
Administration).

administrative process until it has reached a conclusion." *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980). Military exhaustion is a matter of comity between the branches, "to maintain the balance between military authority and the power of federal courts." *Id.* Application of the exhaustion requirement is therefore fact-intensive, requiring "an understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. 185, 193 (1969). In contrast to statutory exhaustion requirements, "judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions." *Ross*, 578 U.S. at 639. The Fifth Circuit has identified at least four such exceptions to military exhaustion: futility, inadequacy of administrative remedies, irreparable injury, and a substantial constitutional question. *Von Hoffburg*, 615 F.2d at 638.

*First*, plaintiffs need not exhaust military remedies "when resort to the administrative reviewing body would be futile." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). They are required to exhaust only those remedies that would "provide a real opportunity for adequate relief." *Id.* For example, exhaustion is "obviously" futile when the administrative body does not have the authority to grant the relief sought. *Id.* at 420–21. In that situation, military relief is a legal impossibility. Similarly, exhaustion may be futile when military relief will not "obviate the need for judicial review." *Id.* at 423. Although that "is not usually a reason for bypassing" the exhaustion requirement, *id.*, when the record all but compels the conclusion that the military process will deny relief, "exhaustion is inapposite and unnecessary," *id.* at 420.

The facts overwhelmingly indicate that the Navy will deny the religious accommodations. The Navy has denied twenty-nine of Plaintiffs' thirty-five accommodations requests.[11] Outside of Plaintiffs' requests, the Navy has, to date, never granted a religious accommodation request for the

---

[11] Supp. Decl. of SEALs, SWCC, EOD, ND, Supp. App. 1023–1134.

COVID-19 vaccine.[12] In fact, in the past seven years, the Navy has never granted a single religious exemption for any vaccine.[13] Several Plaintiffs have been directly told by their chains of command that "the senior leadership of Naval Special Warfare has no patience or tolerance for service members who refuse COVID-19 vaccination for religious reasons and wants them out of the SEAL community."[14]

The Navy's accommodation process confirms those fears. The Navy uses a fifty-step process to adjudicate religious accommodation requests.[15] Under the standard operating procedures for the process, the first fifteen steps require an administrator to update a prepared disapproval template with the requester's name and rank. In essence, the Plaintiffs' requests are denied the moment they begin. That prepared letter is then sent to seven offices for review. After those offices review the disapproval letter, the administrator packages the letter with other religious accommodation requests for final signature. The administrator then prepares an internal memo to Vice Admiral John Nowell, asking him to "sign . . . letters *disapproving* immunization waiver requests based on sincerely held religious beliefs."[16]

Then, at step thirty-five of the process, the administrator is told—for the first time—to read through the religious accommodation request. At that point, the disapproval letter has already been written, the religious accommodation request and related documents has already been reviewed by several offices, the disapproval has already been packaged with similar requests, and an internal memo has already been drafted requesting that Vice Admiral Nowell disapprove the religious accommodation request. The administrator is then tasked with reading the request and recording

---

[12] *Id.*
[13] Pls.' App. 295, ECF No. 17.
[14] *Id.* at 879.
[15] *See* Supp. Decl. of Andrew Stephens, Ex. 1, ECF No. 62.
[16] *See id.*

any pertinent information in a spreadsheet. At no point in the process is the administrator given the opportunity to recommend anything other than disapproval. The materials are then sent to Vice Admiral Nowell. The entire process belies the manual's assertion that "[e]ach request is evaluated on a case by case basis."[17]

Defendants argue that the process is not futile. They say, "The fact that Plaintiffs may not anticipate a favorable outcome does not render the remedies futile." Defs.' Resp. 25, ECF No. 43. That dramatically understates the record. At the preliminary injunction hearing, counsel for Defendants suggested that exhaustion is not futile so long as the Navy has not denied the request. But that the Navy could hypothetically grant a request does not, on this record, "provide a real opportunity for adequate relief." *Hodges*, 499 F.2d at 420. Plaintiffs need not exhaust military remedies when doing so would be futile.

*Second*, plaintiffs need not exhaust military remedies when "available administrative remedies are inadequate" to grant him the relief he seeks. *Von Hoffburg*, 615 F.2d at 640. The inadequacy exception and futility exception sometimes overlap. For example, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). That the Navy has predetermined denial of the religious accommodations may indicate that the administrative process is both inadequate and futile. But the Fifth Circuit has distinguished the two exceptions. *See Von Hoffburg*, 615 F.2d at 640. That distinction is particularly salient here.

Even if the religious accommodations are granted, Plaintiffs will not receive the relief they seek. Again, the record is replete with examples. Those who receive religious accommodations are still "medically disqualified."[18] That means Plaintiffs would be permanently barred from

---

[17] *See id.*
[18] Pls.' App. 159, 838, ECF No. 17.

11

deployment, denied the bonuses and incentive pay that accompany deployment, and deprived of the very reason they chose to serve in the Navy.[19] By contrast, those receiving medical accommodations are not medically disqualified—they receive equal status as those who are vaccinated.[20] Some Plaintiffs were told by their chains of command that *if their religious accommodations were approved*, they would lose their SEAL Tridents.[21] Others will lose their Tridents merely for requesting the exemption.[22] Evidently, even successfully exhausting the religious accommodation process would not grant Plaintiffs the relief they seek. In some instances, it may invite more harm. At best, the available remedies would accord Plaintiffs second-class status in a peerless community. Thus, the available administrative remedies are inadequate.

The Fifth Circuit has discussed two more exceptions to the exhaustion requirement. These last two exceptions overlap somewhat with the first and second factors of the *Mindes* test, so the Court merely outlines them here. The third exception is that "exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies." *Von Hoffburg*, 615 F.2d at 638. That resembles the second *Mindes* factor, which considers "[t]he potential injury to the plaintiff if review is refused." *Mindes*, 453 F.2d at 201. The fourth exception to exhaustion is when "the plaintiff has raised a substantial constitutional question." *Von Hoffburg*, 615 F.2d at 638. That inquiry raises the same issues as the first *Mindes* factor, the "nature and strength of the plaintiff's challenge to the military determination," which generally favors review of substantial constitutional questions. *Mindes*, 453 F.2d at 201. The Court discusses these issues in greater detail in the next section. Here, the Court simply notes that to the extent the analysis on

---

[19] *Id.* at 928–29.
[20] *Id.* at 159, 838.
[21] *E.g.*, *id.* at 906, 1021.
[22] *E.g.*, *id.* at 892, 900.

those factors weighs in favor of judicial review, it also favors excusing the military exhaustion requirement.

At least four recognized exceptions to the exhaustion requirement apply. If one is insufficient, the combination of the four readily supports the Court's finding that the traditional justifications for military exhaustion are not served by the Navy's religious accommodation process. Plaintiffs have therefore satisfied parts one and two of the threshold *Mindes* test.

### b. The Four *Mindes* Factors

Having passed the threshold test, Plaintiffs must next show that the four *Mindes* factors weigh in favor of justiciability. The factors are (1) the nature and strength of the plaintiff's challenge; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201–02.

*First*, the nature and strength of Plaintiffs' claims weigh in favor of judicial review. As to the nature of the claim, "[c]onstitutional claims [are] normally more important than those having only a statutory or regulatory base." *Id.* at 201–02. But "not all constitutional claims are to be weighed equally." *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980). Courts tend to favor review of constitutional claims "founded on infringement of specific constitutional rights, such as the Fifth Amendment privilege against self-incrimination or the First Amendment freedoms of speech and press," as opposed to constitutional claims that, for example, "a serviceman's due process rights were violated by arbitrary and capricious official action." *Id.* Plaintiffs move for a preliminary injunction based on specific violations of their constitutional rights under the Free

Exercise Clause, plus similar violations of RFRA. Plaintiffs' claims are squarely in the category of claims most favorable to judicial review.[23]

Moreover, Plaintiffs' claims are strong. "An obviously tenuous claim of any sort must be weighted in favor of declining review." *Mindes*, 453 F.2d at 201. The Court discusses the strength of Plaintiffs' claims in Section III.B as part of the preliminary injunction analysis. As a brief preview, the vaccine mandate fails strict scrutiny. The mandate treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity. First, the Navy has granted *only* secular exemptions—it has never granted a religious exemption from the vaccine. Second, even if the Navy were to grant a religious exemption, that exemption would still receive less favorable treatment than its secular counterparts. Those who receive religious exemptions are medically disqualified. Those who receive medical exemptions are not. But the activity itself—forgoing the vaccine—is identical. Given the irrationality of the mandate, "[i]t is unsurprising that such litigants are entitled to relief." *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021) (per curiam). Under the first *Mindes* factor, the Plaintiffs have shown that the nature and strength of their claims weigh strongly in favor judicial review.

*Second*, the potential injury to Plaintiffs if review is refused weighs in favor of judicial review. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably

---

[23] As mentioned in the previous section, that Plaintiffs raise substantial constitutional claims also warrants excusing the military exhaustion requirement. *See Von Hoffburg v. Alexander*, 615 F.2d 633, 638 (5th Cir. 1980); *see also, e.g.*, *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) (excusing administrative exhaustion because "[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board"); *Roe v. Shanahan*, 359 F. Supp. 3d 382, 403 (E.D. Va. 2019) (excusing military exhaustion of due process and Administrative Procedure Act claims because the Air Force Board for Correction of Military Records "cannot adjudicate a claim that the Air Force's policies and regulations themselves are unconstitutional or otherwise unlawful"), *aff'd sub nom. Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020); *Adair v. England*, 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (excusing military exhaustion when "the gravamen of the plaintiffs' claims revolves around constitutional challenges based on the First Amendment's Establishment and Free Exercise Clauses and the Fifth Amendment's Due Process Clause"), *aff'd sub nom. In re Navy Chaplaincy*, No. 19-5204, 2020 WL 11568892 (D.C. Cir. Nov. 6, 2020).

constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). This factor overlaps with the preliminary injunction analysis, so (again) the Court does not discuss it at length here. Two points bear mention. First, Plaintiffs are currently suffering injury while waiting for the Navy to adjudicate their requests. Plaintiffs have been declared nondeployable and suffer withheld promotions and travel.[24] In one egregious example, Navy SEAL 26 was approved for a four-week program in Maryland to treat deployment-related traumatic brain injury.[25] He told his commanding officer that he could travel in his own vehicle to the medical facility, which did not have a vaccine requirement for its patients. His commanding officer told him he was not allowed to travel because he was unvaccinated. SEAL 26 missed the opportunity to receive treatment, despite his pending religious accommodation request. Second, some Plaintiffs have suffered injury *because* they submitted religious accommodation requests. Many Plaintiffs have been told that merely requesting a religious accommodation will result in their removal from the Naval Special Warfare community and loss of their Trident.[26] Withholding judicial review is particularly illogical when participation in the administrative process invites the very harm Plaintiffs seek to avoid.

*Third*, the type and degree of anticipated interference with the military function weighs in favor of judicial review. "[I]f the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief." *Mindes*, 453 F.2d at 201. Defendants argue that judicial review would interfere with the military's decisions regarding duty assignments and medical fitness. *See* Defs.' Resp. 28–30, ECF No. 43. But "[i]nterference per se is insufficient since there will always be some interference when review is granted." *Mindes*, 453 F.2d at 201. Over 99% of active-duty Navy servicemembers are fully vaccinated against COVID-

---

[24] Pls.' App. 876–1022, ECF No. 17.
[25] Supp. Decl. of Navy SEAL 26 at 2, ECF No. 63.
[26] *E.g.*, Pls.' App. 878–79, 892, 900, 906, 915, ECF No. 17.

19.[27] Plaintiffs are part of a vanishingly small 0.6%. The Navy already provides secular accommodations. Whether denying religious accommodations violates the First Amendment is a distinct legal question that would not "seriously impede the military in the performance of vital duties." *Id.*

*Fourth*, the extent to which the exercise of military expertise or discretion is involved weighs in favor of review. "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions." *Mindes*, 453 F.2d at 201–02. This is not a suit in which "commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions." *United States v. Shearer*, 473 U.S. 52, 58 (1985). Neither does this case involve "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force." *Chappell v. Wallace*, 462 U.S. 296, 302 (1983) (citation and internal quotation marks omitted). Whether the vaccine mandate passes muster under the First Amendment and RFRA requires neither "military expertise or discretion." *Mindes*, 453 F.2d at 201. It is a purely legal question appropriate for judicial review.

In sum, all four *Mindes* factors favor justiciability. To be sure, "courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations." *Hodges*, 499 F.2d at 424. But they need not indulge that presumption to the point of absurdity. The record overwhelmingly demonstrates that the Navy's religious accommodation process is an exercise in futility. Plaintiffs need not wait for the Navy to rubber stamp a constitutional violation before

---

[27] *Id.* at 284.

seeking relief in court. And this is precisely the type of legal challenge that *Mindes* contemplates is appropriate for the courts to decide. Plaintiffs' claims are justiciable.

### B.  Plaintiffs are likely to succeed on the merits.

Having established that Plaintiffs' claims are justiciable, the Court must consider the first of the four requirements under the preliminary injunction standard: whether Plaintiffs have established a "substantial likelihood of success on the merits." *Daniels Health Scis.*, 710 F.3d at 582. In their motion, Plaintiffs make two substantive claims. First, they allege the vaccine mandate violates RFRA and the First Amendment. Second, they allege the mandate's permanent medical-disqualification provision fails strict scrutiny.

The Court concludes Plaintiffs are likely to succeed on both claims. Because the mandate treats those with secular exemptions more favorably than those seeking religious exemptions, strict scrutiny is triggered, and Defendants fail to show a compelling interest with respect to the servicemembers before the Court.

### 1.  Religious Freedom Restoration Act

Plaintiffs allege that the vaccine mandate substantially burdens their religious exercise without satisfying the compelling interest required under RFRA. Defendants respond that even if Plaintiffs' beliefs are substantially burdened, the Navy has a compelling interest in keeping its force fit and responsive to national security threats. And while Defendants assert that vaccination is the least restrictive means to achieve this end, Plaintiffs suggest alternatives exist. The Court concludes that Defendants have not demonstrated a compelling interest justifying the substantial burden imposed on the Plaintiffs' religious beliefs. Therefore, there is no need to discuss narrow tailoring.

The Religious Freedom Restoration Act "was designed to provide very broad protection for religious liberty." *Hobby Lobby*, 573 U.S. 682, 706 (2014). Passed in 1993 with nearly unanimous support, RFRA provides that the:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1. RFRA extends to the military, because under the text of the statute, "government" includes any "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." *Id.* § 2000bb-2. Defendants do not dispute this.

Defendants have substantially burdened Plaintiffs' religious beliefs. The government burdens religion when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). That is especially true when the government imposes a choice between one's job and one's religious belief. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Here, Plaintiffs must decide whether to lose their livelihoods or violate sincerely held religious beliefs. Because they will not compromise these religious beliefs, Plaintiffs have been threatened with separation from the military and other disciplinary action. Supp. App. 1032, 1096, 1107, 1126, ECF No. 59; Compl., Ex. 3, ECF No. 1-3.

Because the Plaintiffs have demonstrated a substantial burden, Defendants must show that this burden furthers a compelling interest using the least restrictive means.

Plaintiffs claim Defendants cannot demonstrate a compelling interest as to these particular servicemembers. Although they acknowledge that preventing the spread of COVID-19 was, at one time, a compelling interest, Plaintiffs argue that an indefinite state of emergency cannot justify this

compelling interest two years into the pandemic. Pls.' Br. 23–24, ECF No. 16. In response, Defendants argue that the Navy has a vital national security interest in keeping its force healthy and ready to deploy. Because Plaintiffs are members of Special Operations teams, these individuals must stay healthy to carry out highly specialized missions. Defs.' Resp. 33, ECF No. 43.

Although "[s]temming the spread of COVID-19 is unquestionably a compelling interest," its limits are finite. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). Courts must "look beyond broadly formulated interests," and instead consider the "asserted harm of granting specific exemptions to particular religious claimants." *Hobby Lobby*, 573 U.S. at 726–27 (cleaned up) (internal quotations omitted). In other words, Defendants must provide more than a broadly formulated interest in "national security."[28] They must articulate a compelling interest in vaccinating the thirty-five religious servicemembers currently before the Court.

Without individualized assessment, the Navy cannot demonstrate a compelling interest in vaccinating these particular Plaintiffs. By all accounts, Plaintiffs have safely carried out their jobs during the pandemic. Prior to the vaccine mandate, at least six Plaintiffs conducted large-scale trainings and led courses without incident. Supp. Decl. of SEALs 2–3, 7, 15; SWCC 1; EOD 1. Despite Defendants' dismissive remark that Plaintiffs' roles "obviously are not amenable to telework," at least two Plaintiffs have routinely done so. Defs.' Resp. 34, ECF No. 43; Supp. Decl. of SEAL 12, SWCC 5; Supp. Decl. of SEAL 21. Eleven Plaintiffs successfully deployed. Supp. Decl. of SEALs 4–6, 9, 13, 22–23, 26; SWCC 2, 4; EOD 1. The Navy even awarded one Plaintiff

---

[28] Defendants cite an inapplicable case on the Religious Land Use and Institutionalized Persons Act to assert that "RFRA must be applied 'with particular sensitivity to security concerns.'" Defs.' Resp. 32, ECF No. 43 (quoting *Cutter v. Wilkinson*, 544 U.S. 722, 723 (2005)). Defendants also cite nonbinding dicta for the proposition that courts are "reluctant to interpret statutes in ways that allow litigants to interfere with the mission of our nation's military." *Lebron v. Rumsfeld*, 670 F.3d 540, 557–58 (4th Cir. 2012). But as previously discussed in the *Mindes* analysis, "[i]nterference per se is insufficient since there will always be some interference when review is granted." *Mindes*, 453 F.2d at 201.

the Joint Service Commendation Medal for "safely navigating restricted movement and distancing requirements" under COVID-19 protocol in early 2020. Hr'g Test. of EOD 1, Hr'g Ex. 26.

Even if Defendants have a broad compelling interest in widespread vaccination of its force, they have achieved this goal without the participation of the thirty-five Plaintiffs here. At least 99.4% of all active-duty Navy servicemembers have been vaccinated. Pls.' App. 284, ECF No. 17. The remaining 0.6% is unlikely to undermine the Navy's efforts. Today, Plaintiffs present a lower risk of infection and transmission than in the earlier days of the pandemic. Several Plaintiffs have tested positive for antibodies, showing the presence of natural immunity. *See* Decl. of SEALs 10, 22; SWCC 2, 4; Supp. Decl. of SEAL 12. With a 99.4% vaccination rate, the Navy's herd immunity is at an all-time high. COVID-19 treatments are becoming increasingly effective at reducing hospitalization and death. *See* Pfizer Novel COVID-19 Oral Antiviral Treatment Study, Pls.' App. 310.

Moreover, the Navy is willing to grant exemptions for non-religious reasons. Its mandate includes carveouts for those participating in clinical trials and those with medical contraindications and allergies to vaccines. Pls.' App. 154–59. Because these categories of exempt servicemembers are still deployable, a clinical trial participant who receives a placebo may find himself ill in the high-stakes situation that Defendants fear. Defs.' Resp. 34, 48, ECF No. 43. As a result, the mandate is underinclusive. "Indeed, underinclusiveness . . . is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.'" *BST Holdings, LLC v. Occupational Safety & Health Admin.*, 17 F.4th 604, 616 (5th Cir. 2021).

For these reasons, the Court finds that Defendants do not demonstrate a compelling interest to overcome the Plaintiffs' substantial burden. Without a compelling interest, the Court need not address whether Defendants have used the least restrictive means.

### 2. First Amendment

The Court turns now to the Plaintiffs' First Amendment claim. Plaintiffs argue that the Navy's mandate triggers strict scrutiny, because it is not neutral or generally applicable. Defendants insist they have carried their burden to demonstrate their compelling interest and the least restrictive means. The Court finds that for the same reasons Plaintiffs succeed on their RFRA claim, they also prevail on their First Amendment claim.

To assess neutrality and general applicability, courts consider both the structure of the law and any disparate outcomes it creates. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (cleaned up). "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296 (citing *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67–68).

The Navy's mandate is not neutral and generally applicable. First, by accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why a servicemember is not vaccinated. *See* Pls.' App. 153–55 (NAVADMIN 190/21) (describing the exemption process and authority to grant exemption). Consequently, favoritism is built into the mandate.

Second, the "comparable secular activity" includes refusing the vaccine for medical reasons or participation in a clinical trial. These medically exempt, unvaccinated servicemembers

are immediately deployable while unvaccinated servicemembers with religious objections are not. *See* MANMED § 15-105(3)(n)(9); Pls.' App. 838. Defendants justify this discrepancy by contrasting the number of requests: "Whereas there are only seven permanent medical exemptions for all Navy and Reserve personnel from the COVID-19 immunization duty, there are more than three thousand pending requests for a religious exemption . . . ." Defs.' Resp. 35 (citation omitted). But an influx of religious accommodation requests is not a valid reason to deny First Amendment rights. No matter how small the number of secular exemptions by comparison, *any* favorable treatment—in this case, deployability without medical disqualification—defeats neutrality. For these reasons, the mandate triggers strict scrutiny under the First Amendment.

As discussed in Section III.B.1, Defendants fail to satisfy the compelling interest requirement, so there is no need to consider least restrictive means. The Court will not repeat its strict scrutiny analysis here. Plaintiffs have established a substantial likelihood of success on the merits of their RFRA and First Amendment claims, satisfying the first requirement of the preliminary injunction standard.

### 3. Medical-Disqualification Provision

The parties' briefing on the medical-disqualification issue echoes the RFRA and First Amendment analysis discussed at length in Sections III.B.1 and III.B.2 above. In short, the Court finds that, for the same reasons Plaintiffs' RFRA and First Amendment challenges to the mandate itself succeed, Plaintiffs' challenge to the medical-disqualification provision follows.

A servicemember with a religious accommodation is permanently medically disqualified while a servicemember with a medical exemption is not. *See* MANMED § 15-105(3)(n)(9); Pls.' App. 838. In other words, Plaintiffs—even if they were all to be granted religious accommodations immediately—would remain nondeployable and would be forced to seek a medical waiver to have this penalty removed. In short, this disparate treatment triggers strict scrutiny.

Defendants are unable to overcome strict scrutiny because they have not presented a compelling interest, as explained in previous sections. Thus, Plaintiffs are substantially likely to succeed on the merits of their medical-disqualification challenge.

### C.  Plaintiffs face a substantial threat of irreparable harm.

Under the second prong of the preliminary injunction standard, the movants must establish a substantial threat of irreparable harm. Here, Plaintiffs argue they have suffered irreparable injury based on (1) infringement of religious liberties; (2) their nondeployable status, which reduces pay and advancement opportunities; and (3) the threat of court-martial and dishonor accompanying it. Defendants claim that Plaintiffs' harm is merely speculative because the religious exemption requests have not been finally adjudicated. Defendants also argue that Plaintiffs have improperly relied on *BST Holdings*, which applies only to civilian employment.

It is incorrect to say that Plaintiffs' harm is merely speculative at this stage. Plaintiffs are already suffering injury while waiting for the Navy to adjudicate their requests. In some cases, Plaintiffs have suffered injury *because* they seek religious accommodation. Plaintiffs testify that they have been barred from official and unofficial travel, including for training[29] and treatment for traumatic brain injuries;[30] denied access to non-work activities, like family day;[31] assigned unpleasant schedules and low-level work like cleaning;[32] relieved of leadership duties and denied opportunities for advancement;[33] kicked out of their platoons;[34] and threatened with immediate

---

[29] Supp. Decl. of SEAL 16, Supp. App. 1069; Supp. Decl. of SWCC 5, Supp. App. 1121.
[30] Supp. Decl. of SEAL 3, Supp. App. 1032; Supp. Decl. of SEAL 26, ECF No. 63.
[31] Supp. Decl. of SEAL 26, Supp. App. 1103.
[32] Supp. Decl. of SEAL 21, Supp. App. 1084; Supp. Decl. of SEAL 25, Supp. App. 1100.
[33] Supp. Decl. of SEAL 22, Supp. App. 1088; Supp. Decl. of SEAL 3, Supp. App. 1032; Supp. Decl. of SWCC 4, Supp. App. 1118; Supp. Decl. of EOD 1, Supp. App. 1126.
[34] Supp. Decl. of SEAL 21, Supp. App. 1084; Supp. Decl. of SEAL 25, Supp. App. 1100.

separation.[35] At least one Plaintiff has received an email for enrollment in the TAP course, a prerequisite for separation from the Navy.[36]

   While significant and life-altering, these harms do not, by themselves, rise to the level of irreparable injury. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). As Defendants note, even a general discharge from the military—the ultimate threat here—is not an irreparable harm. *See McCurdy v. Zuckert*, 359 F.2d 491, 494 (5th Cir. 1966). No matter how remote the possibility, Plaintiffs could be compensated for their losses. They could be reinstated with backpay, retroactively promoted, or reimbursed for lost benefits like medical insurance and the GI Bill.

   But because these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm. Plaintiffs have suffered the more serious injury of "infringement of their religious liberty rights under RFRA and the First Amendment . . . ." Pls.' Br. 28, ECF No. 16. The crisis of conscience imposed by the mandate is itself an irreparable harm. *See BST Holdings*, 17 F.4th at 618; *Sambrano v. United Airlines*, 19 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373 (plurality opinion). The same is true of RFRA. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). Thus, any losses the Plaintiffs have suffered in connection with their religious accommodation requests sufficiently demonstrate irreparable injury.

---

[35] Supp. Decl. of SEAL 24, Supp. App. 1096; Supp. Decl. of SEAL 3, Supp. App. 1032; Supp. Decl. of SWCC 1, Supp. App. 1107; Supp. Decl. of EOD 1, Supp. App. 1126.
[36] Test. of SEAL 3, Hr'g Ex. 9.

Finally, Defendants allege that Plaintiffs' reliance on *BST Holdings* is improper "as the OSHA requirement at issue in that case applies to civilian employers, not service members." Defs.' Resp. 45, ECF No. 43. But the principle the Supreme Court articulated in *Elrod v. Burns* applies broadly, and the Fifth Circuit has acknowledged that any loss of First Amendment freedom satisfies the irreparable injury requirement, even in the national security context. *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016).

Thus, the second requirement for injunctive relief has been satisfied.

> **D.** **The balance of hardships weighs in Plaintiffs' favor, and the issuance of the preliminary injunction will not disserve the public interest.**

The final two elements of the preliminary injunction standard—the balance of the harms and whether an injunction will disserve the public interest—must be considered together. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). When balancing the harms, courts must consider whether the movant's injury outweighs the threatened harm to the party whom they seek to enjoin. The public interest element is broader in scope.

Plaintiffs seek to preserve the status quo. They argue the balance of harms tips in Plaintiffs' favor, and an injunction is always in the public interest when it prevents deprivation of constitutional rights. Pls. Br. 29, ECF No. 16; *see Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). By contrast, Defendants claim that an injunction will cause the Navy significant harm, including illness, hospitalization, and death among its ranks. Given the public interest in military readiness and national defense, they argue, the injunction should be denied.

This Court does not make light of COVID-19's impact on the military. Collectively, our armed forces have lost 80 lives to COVID-19 over the course of the pandemic. Defs.' App. 263,

ECF No. 44-3. But the question before the Court is not whether a public interest exists. Rather, this Court must address whether an injunction will disserve the public interest. An injunction does not disserve the public interest when it prevents constitutional deprivations. *Jackson Women's Health*, 760 F.3d at 458 n.9.

The Plaintiffs' loss of religious liberties outweighs any forthcoming harm to the Navy. Even the direst circumstances cannot justify the loss of constitutional rights. Fortunately, the future does not look so dire. Nearly 100% of the Navy has been vaccinated. Hospitalizations are rising at a much slower rate than COVID-19 cases. COVID-19 treatments are becoming more effective and widely available.

Thus, Plaintiffs have satisfied the final two requirements for preliminary injunction.

## IV.    CONCLUSION

For the reasons stated, the Motion for Preliminary Injunction is **GRANTED**. Defendants are enjoined from applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to Plaintiffs. Defendants are also enjoined from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation. Mot. 2–3, ECF No. 15.

**SO ORDERED** on this **3rd day** of **January, 2022.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**