IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| U.S. NAVY SEALs 1-26, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01236-O |
| § | |
| JOSEPH R. BIDEN, JR., et al., § | |
| § | |
| § | |
| Defendants. § | |

**ORDER**

Before the Court are Defendants' Motion for Stay (ECF No. 85), filed January 24, 2022; Defendants' Brief in Support (ECF No. 86), filed January 24; Plaintiffs' Response (ECF No. 99), filed January 31; and Defendants' Reply (ECF No. 102), filed February 2. For the following reasons, the Court **DENIES** the Motion for Stay.

**I.      BACKGROUND**

Because the parties are well-acquainted with the facts of this case, the Court will not repeat them at length here. On January 3, 2022, the Court granted Plaintiffs' Motion for Preliminary Injunction, enjoining enforcement of the Navy's COVID vaccination policies against the thirty-five Plaintiffs, who object to the vaccine on religious grounds. *See* ECF No. 66. Since then, Plaintiffs have alleged that Defendants are violating the injunction by preventing some Plaintiffs from attending training, receiving medical treatment, or returning to their job duties. *See* Mot. for Order to Show Cause, ECF No. 95. Defendants claim that Plaintiffs' allegations are meritless and

1

that Plaintiffs' feared outcomes are speculative.[1] *See* Defs.' Resp. 6–12, ECF No. 110. Defendants filed a Motion for Stay on January 24, 2022. ECF No. 85.

## II. LEGAL STANDARD

Just as the preliminary injunction itself is an "extraordinary remedy," staying a preliminary injunction is similarly exceptional. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted). Maintaining the status quo is "an important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). Courts must consider four factors in determining whether to stay a preliminary injunction pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426. Like the preliminary injunction factors, "[t]he first two factors of the traditional [stay] standard are the most critical." *Id.* at 434.

## III. ANALYSIS

Defendants seek to stay the preliminary injunction "to the extent the order precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate, taking into account Plaintiffs' vaccination status, including with respect to deployment and training." Defs.' Br. 5, ECF No. 86. Having considered the law and the parties' briefing, the Court concludes that (1) Defendants have not successfully shown they are likely to

---

[1] The Court does not address the merits of the Motion for Order to Show Cause (ECF No. 95) here but mentions these developing facts as context for the following analysis.

succeed on the merits, and (2) Defendants are not likely to be irreparably injured without a stay. Indeed, were the Court to grant the stay, Plaintiffs have shown they will face irreparable harm. Finally, the public interest weighs in favor of preserving the constitutional rights of the Plaintiffs and maintaining the status quo. For these reasons, the Court **DENIES** Defendants' Motion for Stay.

### A. Likelihood of Success on the Merits

Defendants argue they are likely to succeed on the merits for two primary reasons: first, because this case is not justiciable, and second, because this Court's preliminary injunction relied on a mistaken understanding of medical disqualification and the waiver process.

#### 1. Justiciability of Plaintiffs' Claims[2]

Defendants insist this case is not justiciable because decisions regarding assignment and deployment are strictly within the scope of the Commander in Chief's authority—not civilian courts. Defs.' Br. 12, ECF No. 86. In essence, the Court should not encroach on the decision-making power of the military, even when servicemembers' claims involve constitutional challenges. *Id.* Finally, Defendants argue that "the Court erred in substituting its 'own evaluation of evidence for a reasonable evaluation' by the military regarding the necessity of [the COVID vaccination policy]." Defs.' Br. 14, ECF No. 86 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 68 (1981)).

As to justiciability, Plaintiffs point to the Court's *Mindes* analysis. Plaintiffs argue they need not exhaust military remedies because the Navy's "case-by-case" analysis is predetermined and invariably results in a denial letter. In response to Defendants' claim that the Court must not

---

[2] The Court's *Mindes* analysis in the preliminary injunction covers this topic at length. *See* Order on Prelim. Inj. 6–17, ECF No. 66. Nothing presented in the parties' briefing on this Motion alters that analysis.

3

venture into military decisions, Plaintiffs insist that the Court's order was a legal determination, not a military policy. Pls.' Resp. 8–9, ECF No. 99.

Military decisions involve complex and strategic factors. As a matter of practicality, "courts are generally reluctant to review claims involving military duty assignments," because civilian judges lack military expertise. *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017); *see Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013). Defendants accurately state that civilian courts are unqualified to review "[t]he complex, subtle, and professional decisions as to the composition, training, equipping and control of a military force." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see* Defs.' Reply 4, ECF No. 102.

But this case does not present a question of military strategy or personnel placement. "Whether the vaccine mandate passes muster under the First Amendment and RFRA requires neither 'military expertise or discretion.' It is a purely legal question appropriate for judicial review." Order on Prelim. Inj. 16, ECF No. 66 (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)). Defendants do not dispute that RFRA applies to the military. This Court has not required Defendants to make any particular personnel assignments. All strategic decisions remain in the hands of the Navy. Rather, the preliminary injunction simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation. This Court will not—and cannot—require the Navy to place a particular SEAL in a particular training program. But it can—and must—prevent the Navy from taking punitive action against that SEAL by blocking him from the training program he would otherwise attend.

Even the *Gilligan* Court noted that "there is nothing in our Nation's history or in [the Supreme] Court's decided cases . . . that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied." *Gilligan*, 413 U.S. at 12 n.16 (quoting *Laird*

4

*v. Tatum*, 408 U.S. 1, 15–16 (1972)). The distinction between lawful and unlawful military activities also appears in *Orloff v. Willoughby*, 345 U.S. 83, 93–95 (1953). There, the Supreme Court declined to review a servicemember's lawfully issued duty assignment. But it also hypothesized that, had the servicemember been unlawfully diverted into a duty assignment for which he was not conscripted, the Court may have had reason to review for bad faith and unlawful discrimination. *Id.* at 87–88.

Defendants also briefly discuss *Goldman v. Weinberger*, in which a Jewish servicemember challenged an Air Force regulation that prohibited him from wearing his yarmulke while on duty. 475 U.S. 503, 504–07 (1986). The Supreme Court deferred to the professional judgment of military authorities regarding the unity of the force and concluded that the First Amendment did not afford the servicemember an exception to the dress code. *Id.* at 510.

But in the vaccination context, courts have deviated from *Goldman.* When servicemembers challenged mandatory anthrax vaccines, one court found the plaintiffs' claims justiciable in civilian court, even when vaccine refusal could "threaten the uniformity of the military." *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 126–29 (D.D.C. 2003) ("[H]ere there will be no visible differences between persons who choose to receive the vaccine and those who choose not to receive the vaccine. Thus, concerns about uniformity diminish and a judgment in this case would not affect the uniformity of military personnel to any substantial degree."). Moreover, unlike a yarmulke, a vaccine cannot be added or removed at each shift change. For Plaintiffs, there is no way to partially comply with their sincerely held religious beliefs. The choice to be vaccinated is both binary and irreversible.

### 2. Medical Disqualification and Neutrality

Defendants also argue "the Court based its injunction, at least in part, on a mistaken finding that 'those receiving medical accommodations are not medically disqualified—they receive equal status as those who are vaccinated.'" Defs.' Br. 13, ECF No. 86 (quoting Order on Prelim. Inj. 11–12, 14, ECF No. 66). Defendants submitted a declaration by Force Medical Officer Littlejohn explaining that "a service member who receives an exemption or accommodation from the COVID-19 vaccine requirement, whether for religious or secular reasons, is not [physically qualified] unless he or she obtains a separate medical clearance." Decl. of Littlejohn, Ex. 2, ECF No. 87. In other words, Defendants claim the policies are neutral as to the reason behind the servicemember's objection such that the regulations do not trigger strict scrutiny.[3]

The core question under the First Amendment claim is whether the Defendants treat all unvaccinated servicemembers neutrally. This issue then is only relevant to Plaintiffs' First Amendment claim, not the RFRA claim. Neutrality matters in this context because strict scrutiny is triggered under the First Amendment when a regulation treats comparable secular activity more

---

[3] Here is a brief summary of the conflicting interpretations: The text of Trident Order #12 "does not pertain to medical contraindications or allergies to vaccine administration." App. 99, ECF No. 44-1. Thus, the provision applies only to those refusing the vaccine "based solely on personal or religious beliefs." These individuals "will still be medically disqualified." Therefore, the "separate waiver" process that Trident Order #12 describes appears to only apply to those with religious and personal, not medical, reasons. Likewise, MANMED § 15-105 disqualifies unvaccinated special warfare servicemembers who base their refusal on personal or religious beliefs. App. 229, ECF No. 44-2. And once again, the provision does not apply to those with medical reasons for refusal. Based on this reading, someone with a medical exemption would not need a separate medical waiver.

But according to the Force Medical Officer's declaration, a medically exempt servicemember is deemed NPQ: not physically qualified. Decl. of Littlejohn, Ex. 2, ECF No. 87. To return to PQ (physically qualified) status, the servicemember must seek a waiver, just as someone with a religious accommodation would. But besides general requirements for Special Operations in MANMED, the Force Medical Officer has not cited direct language medically disqualifying (NPQ) an unvaccinated, but medically exempt, servicemember. The Force Medical Officer notes, however, that "all requests for permanent medical exemptions from COVID-19 vaccination for personnel falling under NSWC authority have been denied." Decl. of Littlejohn, Ex. 2, App. 37, ECF No. 87.

favorably than religious practice—in other words, the regulation is not neutral and generally applicable. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam). But because strict scrutiny is required under RFRA, the Court need not resolve the neutrality issue to conclude that the Plaintiffs are likely to succeed on the merits of the RFRA claim. Thus, Defendants' Motion will be denied as to the RFRA claim, and resolution of this issue and its impact on neutrality under the First Amendment will be resolved at the merits stage.

For these reasons, the Court concludes that the case is justiciable and the Plaintiffs are likely to succeed on the merits.

### B. Irreparable Injury

Defendants warn of significant harm if the Court denies the stay. First, if forced to deploy unvaccinated servicemembers, the Navy would face an elevated risk of COVID spread and "catastrophic" results if a servicemember requires medical attention where healthcare resources are scarce. Defs.' Br. 7–9, ECF No. 86. Second, Defendants contend that the preliminary injunction undermines discipline by allowing servicemembers "to define the terms of their own military service." Defs.' Br. 11, ECF No. 86. Neither is sufficient evidence of irreparable harm to Defendants.

#### 1. Risk to the Mission

"Requiring the Navy to allow Plaintiffs to deploy while unvaccinated would pose serious and specific threats to mission success." Defs.' Br. 7, ECF No. 86. Defendants explain that unvaccinated servicemembers present a higher risk of contracting and transmitting COVID. Because "[e]very member of a SEAL team is vital," the Navy cannot afford to lose someone during a critical mission. Defs.' Br. 8, ECF No. 86 (quoting Decl. of Lescher, Ex. 1 ¶ 21, ECF No. 87).

Plaintiffs point to Defendants' delay in requesting a stay, alleging "there is no apparent urgency to the request for injunctive relief." Pls.' Resp. 13, ECF No. 99 (quoting *Gonannnies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006)). Further, Plaintiffs allege that Defendants are not even complying with the Injunction and thus cannot be experiencing harm. They claim that any harm to the Navy is outweighed by harm to Plaintiffs.

Defendants have not provided sufficient evidence that the Navy will be irreparably injured absent a stay. Vice Admiral Merz, deputy chief of naval operations, describes a highly effective force despite the spread of the Omicron variant. Pls.' App. 3–4, ECF No. 100. Even fully vaccinated ships have experienced outbreaks, but "Omicron has a quick turn around and isn't causing severe illness in sailors." Pls.' App. 4, ECF No. 100. In short, "[Omicron] is coming and going all the time, very small numbers, and really no operational impact." *Id.* Defendants' briefing presents a much grimmer version of the facts. They argue that unvaccinated servicemembers will derail missions, require medical attention where healthcare is limited, and jeopardize the health of other servicemembers. Defs.' Br. 7–9, ECF No. 86.

This Court is unconvinced that thirty-five unvaccinated Plaintiffs present an intolerably high risk to their vaccinated peers who *themselves* continue to contract and transmit COVID. Defendants provide an example that "unvaccinated instructors can spread COVID-19 to dozens of candidates in training," who will return to their units, further spreading the virus. Defs.' Br. 10, ECF No. 86. But suppose Plaintiffs were to agree to be vaccinated tomorrow. There is no guarantee they will remain healthy and ready to deploy. A vaccinated instructor may still infect his students. Regardless, vaccinated servicemembers are far more likely to encounter unvaccinated individuals off-base among the general public than among their ranks.[4]

---

[4] Only 64.3% of the U.S. population is fully vaccinated. CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-people-onedose-pop-5yr (last visited Feb. 12,

In short, Defendants have not provided sufficient evidence of risk rising to the level of irreparable harm.

### 2. Discipline in the Ranks

Defendants also allege that the Court's preliminary injunction "undercut[s] the maintenance of military good order and discipline." Defs.' Br. 10, ECF No. 86. In his declaration, Lieutenant Commander Andrew Petralia explains that Plaintiff Navy Diver 2 is a student assigned to his command. Decl. of Petralia, Ex. 3, ECF No. 87. Diver 2 has "refused to submit to weekly COVID-19 testing and claims that he will soon submit a separate religious accommodation request to be excused from this requirement." Defs.' Br. 10, ECF No. 86 (citing Decl. of Petralia, Ex. 3 ¶ 5, ECF No. 87).

The preliminary injunction is limited in scope. It enjoined the Defendants from applying the vaccine mandate to the thirty-five Plaintiffs here and prohibited adverse action on the basis of their religious accommodation requests. To be clear, if true, the behavior of Diver 2 is not within the scope of the Order. In his declaration, Diver 2 asserted that he "view[s] his own life and the lives of [his] fellow service members as sacred." Decl. of U.S. Navy Diver 2, Supp. App. 1011, ECF No. 59. He has consented to "mitigation measures consistent with [his] religious beliefs." *Id.* Diver 2, and Plaintiffs like him, are welcome to submit additional religious accommodation requests, but they may not defy mitigation measures under the guise of following this Court's Order.

### C. Other Factors

Finally, the Court considers the two remaining factors: (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest

---

2022). By contrast, at least 99.4% of active-duty Navy servicemembers are fully vaccinated. Pls.' App. 284, ECF No. 17.

9

lies. Having discussed the substantial injury to the Plaintiffs in the preliminary injunction, the Court now briefly addresses the public interest question.

"When the Government is a party, its interests and the public interest overlap in the balancing of harms." *Nken*, 556 U.S. at 420. Plaintiffs seek to preserve the status quo. They argue that protecting constitutional rights is always in the public interest. Pls. Resp. 15, ECF No. 99; *see Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). Here, preserving the status quo means maintaining the preliminary injunction—in other words, preventing Plaintiffs from being deprived of pay, training, medical treatment, travel opportunities, and more. The Court finds that the public interest supports a denial of the Motion for Stay.

### IV.     CONCLUSION

For the reasons stated, the Court **DENIES** Defendants' Motion for Stay.

**SO ORDERED** on this **13th day** of **February, 2022**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE