**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MICHAEL POFFENBARGER, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:22-cv-1 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| FRANK KENDALL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION (DOC. NO. 2) AND ISSUING A PRELIMINARY
INJUNCTION**

---

Pending before the Court is the Motion for Preliminary Injunction (within Doc. No. 2) (the

"Motion") filed by Plaintiff Michael Poffenbarger ("Poffenbarger"). Poffenbarger is a reservist in

the United States Air Force (the "Air Force") stationed at Wright-Patterson Air Force Base. In

short, Poffenbarger's claims in this lawsuit challenge the Air Force's administration of its COVID-

19 vaccination mandate, in particular its administration of religious exemption requests. He

alleges that there is a "systematic effort" by the Defendants[1] and those who report to them to

"flagrantly violate federal law … in a concerted and deliberate effort to violate the rights of

members of the Air Force" under the Religious Freedom and Restoration Act ("RFRA") and the

Free Exercise Clause of the First Amendment, as demonstrated by the Air Force's failure "to

approve a single religious accommodation request" while approving "thousands of administrative

---

[1] The Defendants are alleged to be the Secretary of the United States Air Force (Hon. Frank Kendall), Surgeon General of the Air Force (Lt. General Robert I. Miller), Commander of the U.S. Air Force Reserve Command (Lt. General Richard W. Scobee), Commander of the Fourth Air Force (Maj. General Jeffrey T. Pennington), Poffenbarger's Squadron Commander (Lt. Colonel Christopher Kojak), Poffenbarger's Wing Commander (Colonel Raymond Smith), and the United States of America. (Doc. 1 at PageID 1-3.)

or medical exemptions to the same requirement." (Doc. 1 at PageID 2-3.) With respect to the Motion presently before the Court, Poffenbarger seeks broad preliminary injunctive relief, including issuance of a preliminary injunction for "the entirety of those in the Air Force's religious exemption process whose beliefs have been found to be sincere, as well as those who have already had their requests denied despite their sincerely held beliefs" (Doc. No. 26 at PageID 1038).

Defendants (in their official capacity only) ("Defendants") filed an opposition to the Motion, asking that Poffenbarger's requested preliminary relief be denied for multiple reasons. (Doc. No. 22.) Defendants argue that Poffenbarger fails to satisfy the standard for preliminary injunctive relief (with none of the factors weighing in favor of Poffenbarger) and that, even if the Court disagrees and decides to issue a preliminary injunction, "any relief should be no broader than necessary to provide relief to" Poffenbarger only, not others. (*Id.* at PageID 371.)

The Court finds that a relatively limited preliminary injunction should be issued that essentially preserves the status quo during the pendency of this matter to prevent Defendants from imposing any further adverse action against Poffenbarger (only) for his refusal to comply with an order requiring him to receive a COVID-19 vaccine. For the reasons discussed below, and in accordance with Federal Rule of Civil Procedure 65, the Court **GRANTS, IN PART,** Poffenbarger's request for issuance of a preliminary injunction and **ISSUES** a preliminary injunction whose terms are specifically set forth in this Order's CONCLUSION section.

## I.   BACKGROUND

### A.  Lieutenant Poffenbarger

According to his testimony at the preliminary injunction hearing, Poffenbarger enlisted in the Air Force in 2005 and served for a number of years as an active duty member. His service included two overseas deployments. In 2014, Poffenbarger decided to leave active duty and transfer to the reserves. He has been a Christian for his entire life, and he has a wife and four

children under the age of ten.  Poffenbarger has full-time civilian employment, working as a field surveyor.  He does not receive health care benefits through that employment; he and his family receive health care benefits through his service with the Air Force Reserve.

Poffenbarger is a member of the Air Force Reserve who was commissioned as a Second Lieutenant in the fall of 2021.  (Doc. No. 22-18 (Kojak Decl.) at PageID 967-68.)  He is assigned to work as an intelligence officer.  (*Id.*)  Before he can perform his duties as an intelligence officer, Poffenbarger must attend intelligence technical school.  (*Id.*; Doc. No. 22-17 (Maguinness Decl.) at PageID 962-63.)  Due to the sensitive nature of the training, which includes the use of classified materials and systems, the training takes place in a secured facility.  (Doc. No. 22-17 at PageID 962-63.)  Windows and doors at secured facilities must remain closed.  (*Id.*)  The classrooms within the secured facility are consistently fully occupied (each with approximately 15 students and one instructor) and are not large enough to ensure six feet of social distancing among students and instructors.  (*Id.*)  Current Air Force policy does not permit any unvaccinated individuals to attend new training courses because service members would be in close contact with others during training.  (Doc. No. 22-18 at PageID 968.)

If Poffenbarger were to complete training, then his duties would require the use of classified materials and systems.  (Doc. No. 22-18 at PageID 969-70.)  For security purposes, classified systems (e.g., a classified computer network) cannot be accessed, and classified materials cannot be viewed, outside a secured facility.  (*Id.*)  Therefore, to perform his duties as an intelligence officer, Poffenbarger would be required to work one weekend (eight hours both days) every month in a secured facility, as well as to be prepared for potential deployment worldwide. (*Id.* at PageID 969-70, 973.)  As a reservist, he does not work full-time for the Air Force.  (*Id.*)

During ordinary weekends working as a reserve, Poffenbarger would routinely be working

in close physical contact with 10 to 12 service members.  (Doc. No. 22-18 at PageID 969-70.)  In the secured facility, his desk would be in a secure room (approximately 1,500 square feet in size) in a group of about eight desks, each separated from one another by large bookcases.  (Doc. 11-1 at PageID 291-92.)  According to Poffenbarger, several of the full-time staff currently telework most days during the month.  (*Id.* at PageID 292.)  Poffenbarger acknowledged at the preliminary injunction hearing that he needs to be present at the secure room to access the confidential materials that he uses for his military duties, and that his work requires interaction with other military personnel.

### B.  Air Force COVID-19 Vaccination Mandate and Exemptions

On September 3, 2021, Defendant Kendall, in his role as Secretary of the United States Air Force, issued a memorandum with the subject: "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members."  (Doc. No. 1-1; *see also* Doc. No. 2-1.)  That memorandum stated, in part:

> On 24 August 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.  …  Only COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization or is included in the World Health Organization's Emergency Use Listing.  Individuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt.

(Doc. No. 1-1.)

The Air Force has granted temporary medical exemptions and administrative exemptions from the COVID-19 vaccine mandate.  (*See, e.g.,* Doc. No. 22-16 (Little Decl.) at PageID 885; Doc. No. 22-19 (Poel Decl.) at PageID 985.)  Medical exemptions are provided in situations where medical issues are temporary (e.g., during pregnancy) or permanent (e.g., allergic or severe adverse

reaction to ingredients in a vaccine). (Doc. No. 22-19 at PageID 985.) Granting these exemptions as temporary exemptions "allows individuals who have a temporary medical condition … to get vaccinated after that temporary condition has resolved" and "also allows the Air Force to reassess individuals with allergies or severe adverse reactions to determine whether a vaccine has been approved which [sic] constitutes the member can safely take." (*Id.*)

The Air Force also has policies and procedures for addressing religious accommodation requests, including requests for a religious exemption from the COVID-19 vaccine mandate. (Doc. No. 22-13 (Streett Decl.) at PageID 744, 747.) Poffenbarger alleged in his Complaint that, "[u]pon information and belief, [Defendant Kendall, the Secretary of the Air Force] gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy." (Doc. No. 1 at PageID 6.)

According to a declaration submitted by the Defendants, "[t]o ensure commanders are properly informed of the facts and circumstances of the [religious exemption] request and able to make an informed recommendation and/or decision, the Air Force uses a Religious Resolution Team, which is a multidisciplinary team that advises commanders regarding resolution of religious liberty matters." (Doc. No. 22-13 at PageID 746.) Yet, the requirement for using that team was temporarily waived by the Air Force Reserve Command for purposes of assessing religious exemption requests for the COVID-19 vaccine mandate. (*Id.* at PageID 747; Doc. No. 22 at PageID 343.)

Based on a declaration submitted in another pending federal case, as of February 3, 2022, the Air Force had granted 1,513 temporary medical exemptions and 2,314 total administrative exemptions from the COVID-19 vaccine mandate. (Doc. No. 26-1.) As of the same date, the Air

Force had granted only nine religious exemption requests.[2]  (*Id.*)  With respect to the religious exemption requests, the Air Force approved eight and denied 3,180 at the initial review stage, and the Air Force approved one and denied 443 at the appeals stage.  (*Id.*)  It appears that those nine religious exemption approvals all happened after Poffenbarger filed his complaint in this action (after he had exhausted his administrative appeals).  *Air Force Officer v. Austin*, No. 5:22-cv-9, --- F. Supp. 3d ---, 2022 WL 468799, at *1 n.3 (M.D. Ga. Feb. 15, 2022) ("as of January 31, 2022, the Air Force had yet to approve a single religious exemption," and "the Air Force granted these nine exemptions in the" following two weeks).  Therefore, at the time when Poffenbarger filed this case and asked for preliminary injunctive relief (and for a few weeks thereafter), the Air Force had not approved a single religious exemption request to the COVID-19 vaccine mandate—temporary or otherwise.  *Id.* at *1 ("[d]espite thousands of requests for religious exemption, the Air Force hadn't granted a single one of them when [p]laintiff filed her Complaint").

### C.  Poffenbarger's Request for a Religious Exemption and Its Denial

On or about October 2, 2021, Poffenbarger was on active duty and received a direct order to be vaccinated against COVID-19.  (Doc. No. 1 at PageID 4; Doc. No. 1-2 ("I am ordering you to receive an initial dose of a COVID-19 vaccine with full licensure approval from the FDA AND provide proof by 3 October 2021") (emphasis removed).)  The order also indicated the possibility of receiving an exemption.  (Doc. No. 1-2 at PageID 17 ("The due date above also applies to exemptions.  This means you must provide either a completed request for a religious accommodation addressed to the AFRC Commander (delivered to me) or proof of a medical exemption approved by a military medical provider.").)

In response to the order, Poffenbarger submitted a request for a religious exemption.  (Doc.

---

[2] Poffenbarger relies on the data in the declaration, and the Defendants do not dispute it.  At the preliminary injunction hearing, Defendants' counsel said that approximately ten religious exemptions have now been granted.

No. 1 at PageID 4.)  As part of that process, he was interviewed multiple times by an Air Force

Chaplain.  (*Id.* at PageID 2.)  He asserts this was done "to determine the sincerity of his beliefs

and that the mandate[] substantially burdened those beliefs."  (*Id.*)  Poffenbarger explained his

religious beliefs, and the burden placed on his expression of those beliefs, to the Air Force.  (*See*

Doc. No. 1-4 at PageID 21-22.)  For example, he told the Air Force:

> As a Christian, I am compelled to consider the commandments of my Creator and
> evaluate my actions based on both short-term earthly concerns and the eternal.  …
> All COVID-19 vaccines are associated with abortion.  The J&J used abortion cell
> lines in the design, production, and testing phases … The Pfizer and Moderna both
> used these cell lines in the testing phase … My faith makes it clear that the murder
> of innocents is a sin. … Abortion is absolutely contrary to these basic religious
> tenants; thus, I cannot engage in activities which are connected to this act.  …  I
> know that to accept injection of any currently available or the FDA approved
> Comirnaty COVID-19 vaccinations would be a sin.  I would be a willing and
> knowing participant in the murder of innocents.  It is also my belief that using these
> technologies to force our bodies to manufacture this pathogenic protein is not a part
> of God's plan for our bodies.  ….

(Doc. No. 1-4 at PageID 21-22.)  Poffenbarger testified during the preliminary injunction hearing

that, to his knowledge, all currently available COVID-19 vaccines are associated with abortion;

he does not object to taking vaccines as a general matter; he received other vaccines required by

the military because, to his knowledge, they do not suffer from this same issue; and he would be

willing to receive a COVID-19 vaccine if one is manufactured that does not suffer from this same

issue.

On or about October 22, 2021, Poffenbarger's religious exemption request was denied.

(Doc. No. 1 at PageID 5; Doc. No. 1-3.)  The denial acknowledged the sincerity of his religious

beliefs, but stated that mission readiness required Poffenbarger to receive COVID-19 vaccination.

(Doc. No. 1-3.)  More specifically, it stated:  "I understand your concerns, which are based on your

sincerely held beliefs. …  I do not doubt the sincerity of your beliefs."  (*Id.*)  The denial explained:

> Given the importance of our mission, the Department of Defense and the
> Department of the Air Force have a compelling government interest in maintaining

a healthy and ready military force through vaccination. Specifically regarding the COVID-19 vaccination, since less restrictive means of protecting our force from COVID-19 are unavailable, all uniformed Airmen must be fully vaccinated against COVID-19 and other infectious diseases. Individual medical readiness is a critical requirement for maintaining a healthy and ready force.

(*Id.*)

Poffenbarger then proceeded with an administrative appeal. (Doc. No. 1 at PageID 5; Doc. No. 1-4.) On or about December 8, 2021, that appeal was denied. (Doc. No. 1 at PageID 5; Doc. No. 1-5 ("There are no less restrictive means available in your circumstance as effective as receiving the above immunization in furthering these compelling government interests.").) The decision on that appeal was the denial of his "final appeal." (Doc. No. 1-5.)

On or about December 10, 2021, Poffenbarger received an order from his commander that required him to be vaccinated on his next duty day, which was January 3, 2022. (Doc. No. 1-6.) The order stated: "Failure to comply with this lawful order may result in administrative and/or punitive action for Failing to Obey an Order under Article 92, Uniform Code of Military Justice." (*Id.*) Pursuant to that article, "Any person subject to [the Uniform Code of Military Justice] who (1) violates or fails to obey any lawful general order or regulation; (2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or (3) is derelict in the performance of his duties; shall be punished as a court-martial may direct." 10 U.S.C. § 892. According to Poffenbarger, he is unable to comply with the order because it violates his "fundamental dictates of religion," "even if it means federal prison through the UCMJ process." (Doc. No. 1 at PageID 7.)

On January 3, 2022, Poffenbarger's Wing Commander issued him a Letter of Reprimand for failure to follow the order to receive his first dose of the COVID-19 vaccine. (Doc. No. 15-1 (Smith Decl.) at PageID 309.) However, that Letter of Reprimand was issued prior to coordinating with the 4th Air Force, so it was rescinded and a new, nearly identical Letter of Reprimand was

issued on January 10, 2022. (*Id.* at PageID 310; Doc. No. 15-1 (1/10/22 Letter of Reprimand) at PageID 314 ("It has come to my attention you have failed to follow a lawful order to get the Pfizer COVID-19 vaccine. … This is a violation of Article 92, Uniform Code of Military Justice. … You are hereby reprimanded! As a member of the United States Air Force, it is your duty to obey the lawful orders of your Commander. In the future, I expect you to obey the orders of your Commander and adhere to all laws and Air Force standards. Further misconduct may result in more severe action.").) Poffenbarger was also issued a "Notification of Denial of Participation, placing him in a No Pay/No Points status" and "excus[ing] [him] from future drill while the Letter of Reprimand is pending." (Doc. No. 15-1 at PageID 310, 317.) If the Letter of Reprimand is upheld, then "Air Force regulation requires that it be placed in his Unfavorable Information File," and, if he "continues to not be vaccinated, Air Force policy directs that he be involuntarily reassigned to the IRR [Individual Ready Reserve]." (*Id.*) If he is reassigned to the IRR, then his eligibility for health care benefits will be affected. (*Id.*) "The IRR is not a discharge or separation"; "[t]he service member remains a member of the Air Force, but is not participating in any pay or points gaining activities." (*Id.*) At least as of February 22, 2022, Poffenbarger was still receiving reduced-rate health insurance benefits through the military; he had not been discharged from the service; no discharge proceedings had been initiated; and, he had not been court-martialed.

Poffenbarger filed his Complaint on Sunday, January 2, 2022 as a verified class action complaint for declaratory judgment and injunctive relief. (Doc. No. 1.) The Complaint makes two claims: (1) violation of the RFRA, and (2) violation of the First Amendment of the United States Constitution. (*Id.*) The same day, Poffenbarger filed the Motion. (Doc. No. 2.) He supplemented his argument on January 10, 2022. (Doc. No. 11.) On January 31, 2022, the Defendants filed an opposition to the Motion (Doc. No. 22) (the "Opposition"). On February 14,

2022, Poffenbarger filed a reply in support of the Motion (Doc. No. 26) (the "Reply"). This was followed by two notices of supplemental authority filed by Poffenbarger. (Doc. Nos. 27 and 29.) On February 22, 2022, the Court held a preliminary injunction hearing at which Poffenbarger testified and counsel for Poffenbarger and Defendants provided oral argument.

## II.    ANALYSIS

Poffenbarger requests that the Court issue a preliminary injunction (1) "to include granting his religious exemption," and (2) "requiring Defendants to comply with the federal RFRA both as to Poffenbarger and more broadly to the other airmen whose rights Defendants are [allegedly] violating." (Doc. No. 2 at PageID 44.) Poffenbarger more specifically requests an injunction that "(i) requires the immediate processing and acceptance of Lt. Poffenbarger's religious accommodation request under RFRA; (ii) requires timely and good faith processing of other religious accommodation requests in accordance with the timeliness contained in current Department of Defense instructions, and appropriately considers whether such request can be accommodated within the framework of RFRA and its least restrictive means (as well as a fulsome consideration of alternatives to denial of such request); and (iii) ceases the Defendants' current policies of engaging in a double standard between medical and administrative exemptions, on the one hand, which are granted where appropriate, and religious exemptions, on the other, which are never granted." (*Id*. at PageID 60; *see also* Doc. No. 2-4 (Poffenbarger's proposed order granting his motion for a preliminary injunction, including, among other things, providing relief from punitive action taken against airmen who submitted a religious exemption request to which Defendants did not dispute the sincerity of the asserted religious beliefs); Doc. No. 26 at PageID 1022.)

Despite the broad relief requested, the issue currently presented is a relatively narrow one.

The issue is <u>not</u> whether the military may administer vaccines or impose a vaccine "mandate." *See Oklahoma v. Biden*, --- F. Supp. 3d ---, No. CIV-21-1136-F, 2021 WL 6126230, at \*8 (W.D. Okla. Dec. 28, 2021) ("The COVID vaccination mandate should be understood against the backdrop of other military immunization mandates—which date back as far as General George Washington's mandate that troops in the Continental Army be inoculated against smallpox. Nine vaccinations (now ten, with the COVID vaccination mandate) are required for all service members. This includes statutorily-designated reserve component service members.").

Similar cases have been filed by other military personnel in other district courts around the country, challenging the military's administration of its COVID-19 vaccine mandate and requested exemptions from it. *See, e.g., Air Force Officer*, 2022 WL 468799, at \*13 (granting plaintiff-reservist's motion for preliminary injunction concerning her RFRA and Free Exercise claims; enjoining defendants from enforcing the military's COVID-19 vaccine mandate against the plaintiff and from taking any adverse action against her on the basis of the lawsuit or her request for religious accommodation); *U.S. Navy SEALS 1-26 v. Biden*, --- F. Supp. 3d ---, No. 4:21-cv-01236-O, 2022 WL 34443, at \*1 (N.D. Tex. Jan. 3, 2022) (granting preliminary injunction to military members concerning their RFRA and Free Exercise claims against the military's mandatory COVID-19 vaccination policy, determining that "[t]he Navy provides a religious accommodation process, but by all accounts, it is theater," and explaining that "[t]he COVID-19 pandemic provides the government no license to abrogate" religious freedom); *Navy Seal 1 v. Austin*, --- F. Supp. 3d ---, No. 8:21-cv-2429, 2022 WL 534459 (M.D. Fla. Feb. 18, 2022) (granting preliminary injunction to military members concerning their RFRA and Free Exercise claims against the military's mandatory COVID-19 vaccination policy; permitting them, pending a final determination on a complete record, to continue to serve without the vaccination and forbidding

any punitive or retaliatory measure against them pending a final judgment in the action).[3]

## A. Preliminary Injunction Standards

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* "A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (internal citation omitted).

"A district court must balance four factors when considering a motion for a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "[T]he harm to the opposing party and the public interest factors merge when the Government is the opposing party." *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020).

Plaintiff's assertion that, "where constitutional rights are infringed upon … , the likelihood of success factor is dispositive" is too strong (Doc. No. 2 at PageID 53). *See, e.g., Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (cited by Plaintiff, yet the court considered all factors

---

[3] The Defendants direct the Court to five additional decisions, arguing that those courts "have declined to grant service members' similar motions for preliminary injunctions." (Doc. No. 22 at PageID 339.) However, none of those cases are nearly as similar to the case here as the three just identified. Those five additional decisions involved distinguishable situations where the claims made were different (i.e., not RFRA and/or Free Exercise claims) or the claims were not yet ripe because the plaintiff's administrative appeals process was still pending.

and simply stated that "[p]reliminary injunctions in constitutional cases often turn on likelihood of success on the merits, usually making it unnecessary to dwell on the remaining three factors"); *D.T. v Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (to grant a preliminary injunction, "the existence of an irreparable injury is mandatory") (emphasis removed). However, the Court does recognize that, in First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits" because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the" government action. *Bays*, 668 F.3d at 819. And, "a court must not issue a preliminary injunction where the movant presents no likelihood of merits success." *Wilson*, 961 F.3d at 844.

Finally, if a Court does issue a preliminary injunction, then the order must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

## B. <u>Strong Likelihood of Success on the Merits</u>

Defendants argue that Poffenbarger is unlikely to succeed on the merits of his claims. (Doc. No. 2 at PageID 338.) Defendants contend that "[t]he challenged vaccine requirement explicitly contemplates the possibility of a religious accommodation, and the military assesses such requests under the standards set forth in the" RFRA. (Doc. No. 22 at PageID 338.) They further argue that the "Air Force's interest in protecting the health of its service members to carry out its mission is indisputably compelling, and there is no basis for the Court to conclude that [Poffenbarger's] proposed less restrictive alternatives, such as testing and isolation, would protect the military's compelling interests as effectively as immunization." (*Id.* at PageID 338-39.)

Poffenbarger argues that he has a strong likelihood of success on the merits of his claims. He asserts that Defendants continue to substantially burden his exercise of religion by requiring

him to comply with the COVID-19 vaccine mandate. (*See* Doc. No. 2 at PageID 54.) He argues that Defendants "do so in a manner that is not the least restrictive means of furthering any compelling governmental interest." (*Id.*) Poffenbarger asserts that there are several other less-restrictive means for the Defendants to further the Air Force's alleged interests:

> Defendants could require (timely and accurate) testing to determine infection and then take measures accordingly;
>
> Defendants could require temperature checks and/or other screening to determine infection;
>
> Permit[] Poffenbarger, in the ordinary course of interactions with others, to become infected with COVID-19 … so as to develop … natural immunity;
>
> Defendants could provide an exemption anyways in that vaccination will not guarantee immunity … ;
>
> Require isolation where appropriate to keep Lt. Poffenbarger away from those with the disease;
>
> Place Lt. Poffenbarger in a position and/or Military Occupational Specialty that is available for remote work or telework, and not in contact with other soldiers;
>
> …[P]rovide[] an exemption to those members [with documented medical and religious exemption requests];
>
> As a second to last final option, place Lt. Poffenbarger in non-deployable status and/or assignment to a unit that does not deploy overseas; and/or
>
> As a final option, honorably discharg[e] Lt. Poffenbarger.

(Doc. No. 2 at PageID 56-57.)

The Court finds that, at this stage of the litigation and based on what has been presented, Poffenbarger has shown a strong likelihood of success on the merits of his claims.

### 1) <u>Justiciability and application of the RFRA and the First Amendment to the military</u>

Neither party expressly addressed the justiciability of this action, although the Defendants emphasize the deference that courts give to the military's decisions and that judicial review is "highly constrained." (Doc. 22 at PageID 349-50.) As an initial matter, the Air Force and other

branches of the military are not exempt from the RFRA or the First Amendment's application. The text of the RFRA shows that it is applicable to the military. 42 U.S.C. § 2000bb-1; 42 U.S.C. § 2000bb-2(1) (defining "government"); *see also Navy Seal 1 v. Biden*, --- F. Supp. 3d ---, No. 8:21-cv-2429, 2021 WL 5448970, at *9 (M.D. Fla. Nov. 22, 2021) ("[u]nder 42 U.S.C. § 2000bb-2(1), RFRA's restriction applies to action by each 'branch, department, agency, instrumentality, and official … of the United States,' including the armed forces" and "[i]n *DoD Instruction 1300.17: Religious Liberty in the Military Services* (Sept. 1, 2020), the Department of Defense incorporates RFRA's standard to guide accommodating religious practice in the military"). Additionally, military personnel are not excluded from First Amendment protections, although application of those protections may differ in a military context from a civilian context. *Parker v. Levy*, 417 U.S. 733, 758 (1974) ("[w]hile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections"); *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981) (when considering constitutional protections, "the tests and limitations to be applied may differ because of the military context"). Thus, "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Parker*, 417 U.S. at 758.

Here, the Court is addressing the Air Force's decision to require Poffenbarger to comply with its COVID-19 vaccine mandate upon denying his request for a religious exemption. The Sixth Circuit in *Harkness* adopted the test from *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) for determining the reviewability of a particular military decision. *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 444 (6th Cir. 2017); *Bickel v. Delaware Air Nat'l Guard*, No. 2:18-cv-119, 2018

WL 2183296, at *6 (S.D. Ohio May 11, 2018) ("[t]he Sixth Circuit explicitly adopted the *Mindes* test as the proper framework for determining the justiciability of claims involving internal military decisions in" *Harkness*). "[A]n internal military decision is unreviewable unless two initial requirements are satisfied: (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Harkness*, 858 F.3d at 444 (internal quotation marks omitted). "If the plaintiff meets both prerequisites, then four factors must be weighed to determine justiciability: [1] the nature and strength of the plaintiff's challenge; [2] the potential injury to the plaintiff of withholding review; [3] the degree of anticipated interference with the military function; and [4] the extent to which military expertise or discretion is involved." *Harkness*, 858 F.3d at 444.

Here, both prerequisites are satisfied. Regarding the first prerequisite, Poffenbarger alleges deprivation of a constitutional right. (Doc. No. 1 at PageID 1, 11.) He also alleges that the Air Force has acted in violation of its own regulations. (*Id.* at PageID 6.) Regarding the second prerequisite, no party argues that Poffenbarger has failed to exhaust his available intraservice corrective measures, and it appears that he has done so. (*Id.* at PageID 4-5.) This contrasts with, for example, the situation in *Church v. Biden*, No. CV 21-21-2815, 2021 WL 5179215, at *10 (D.D.C. Nov. 8, 2021), where the service member plaintiffs' appeals of denials for religious accommodations to the Department of Defense vaccine mandate remained pending, and the service member plaintiffs had not been disciplined nor separated from the Marine Corps. *See also Air Force Officer*, 2022 WL 468799, at *6 (plaintiff Air Force reservist exhausted her available intraservice corrective measures because she submitted her religious accommodation request and the Surgeon General of the Air Force ultimately denied her final appeal).

Therefore, the Court must weigh the four *Mindes* factors set forth above. Regarding the first factor, Poffenbarger is challenging the Air Force's administration of its COVID-19 vaccination mandate, including the administration of exemption requests. His challenge involves weighty protections under the RFRA and the First Amendment. As shown below, the Court finds that Poffenbarger's challenge is strong based on the arguments and evidence presented to date. Regarding the second factor, if the Court withholds review, then Poffenbarger may (continue to) lose First Amendment freedoms, as well as lose a portion of his livelihood (his career with the Air Force) and health care benefits for him and his young family. Additionally, he could be negatively impacted in keeping or obtaining a civilian job through the disciplinary action that the Air Force could take (e.g., through court-martial). Regarding the third factor, the anticipated interference with the Air Force's function is limited. *Air Force Officer*, 2022 WL 468799, at *7 ("it is interference that 'seriously impede[s] the military in the performance of vital duties[ ]' that 'militates strongly against [judicial review]'") (quoting *Mindes*, 453 F.2d at 201) (alterations in original). This case (at least currently) involves a single Air Force reservist who would work approximately one weekend a month for the Air Force if not deployed. Additionally, the fact that the Air Force is allowing temporary exemptions from the COVID-19 vaccine mandate for non-religious reasons counsels against finding serious interference. Additionally, although not necessarily a particularly strong consideration, a very high percentage of the Air Force service members have received a COVID-19 vaccine.[4] *See, e.g., Air Force Officer*, 2022 WL 468799, at *7 ("[t]oday, 97.8% of the Air Force (active duty, guard, and Reserve status) is fully vaccinated against COVID-19"). The Court is also hopeful that further medical breakthroughs will allow additional vaccines or treatments against COVID-19 to become readily available and that would

---

[4] Of course, there were many months between the time when COVID-19 became a pandemic and when vaccines against COVID-19 became available.

not be objectionable to Poffenbarger or others on religious grounds.  Regarding the fourth factor, the Court finds that military expertise or discretion is involved in the decision regarding whether to require compliance with a COVID-19 vaccine mandate or allow an exemption.  However, the particular issues and constitutional questions presented here are not so foreign to those outside the military as to give the Court serious concern about its ability to decide the case.  *Mindes*, 453 F.2d at 201-02 ("[c]ourts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions"); *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953) (affirming that duty assignment for military doctors lawfully inducted into the Army was a matter of military discretion).  COVID-19 has affected all of society, and vaccine mandates (and religious accommodations and challenges to vaccine mandates) are present outside of a military context.

Thus, the Court finds that the *Mindes* factors weigh in favor of finding justiciability.  *Air Force Officer*, 2022 WL 468799, at *8 (concluding that all four of the *Mindes* factors weighed in favor of justiciability); *U.S. Navy SEALS 1-26*, 2022 WL 34443, at *4-8 (applying *Mindes* test and determining that plaintiffs' RFRA and Free Exercise claims against administration of Navy's COVID-19 vaccine mandate exemptions are justiciable); *see also Navy Seal 1*, 2021 WL 5448970, at *12 (where military service members asserted RFRA and Free Exercise claims challenging the military's regulations governing its COVID-19 vaccination requirement, explaining that "Congress by RFRA purposefully creates and narrowly targets a claim, available in the district court, for everyone in every branch of government, including the military, to enforce the fundamental right to free exercise of religion"); *Renicker v. Marsh*, 640 F. Supp. 244, 246 (N.D. Ohio 1986) (application of principles from *Mindes* did not preclude justiciability of case that involved whether the process afforded to plaintiff former serviceman at his disability claim hearing

conducted by the Army was adequate); *Brown v. Glines*, 444 U.S. 348, 349 (1980) (ruling on First Amendment challenge to Air Force regulations that require service members to obtain approval from their commanders before circulating petitions at Air Force bases). However, as shown in this Order, the Court will proceed cautiously and consider the deference given to military decisions.

### 2) **RFRA claim**

Poffenbarger's first claim is for violation of the RFRA. (Doc. No. 1 at PageID 9-11.) He alleges that "Defendants have, and continue, to substantially burden [his] exercise of religion, in light of their vaccine mandates, along with their refusal to timely process [his] accommodation request to that requirement (even though this is required by applicable regulation), do so not in furtherance of a compelling governmental interest, and do so in a manner that is not the least restrictive means of furthering any compelling government interest." (*Id.* at PageID 10.)

### a. **RFRA requirements**

"Congress enacted RFRA in 1993 in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). In fact, "Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)[5]; *see also Navy Seal 1*, 2021 WL 5448970, at *9 ("if a service member's RFRA claim fails, the service member's First Amendment claim necessarily fails"). The RFRA "prohibits the Federal Government from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." *Burwell*, 573 U.S. at 690-91. More specifically, the statute states: "Government shall not substantially burden a person's exercise of

---

[5] "Although *Holt* involved a claim under RFRA's sister statute, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), RLUIPA mirrors RFRA and the same standards apply to each." *New Doe Child #1 v. Congress of the U.S.*, 891 F.3d 578, 587 n.2 (6th Cir. 2018).

religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." 42 U.S.C. § 2000bb-1(a). Subsection (b) states: "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Therefore, analyzing a RFRA claim involves a multi-step process. *See New Doe Child #1 v. Congress of the U.S.*, 891 F.3d 578, 585 (6th Cir. 2018) (the elements of a RFRA claim are "(1) the plaintiff seeks to engage in (or avoid engaging in) conduct that constitutes an exercise of religion; (2) the Government has placed a substantial burden on that plaintiff's exercise of religion; and (3) the Government either has no compelling interest in imposing that burden or (4) the Government has another less restrictive means of achieving its compelling interest").

First, the plaintiff must demonstrate that a government action substantially burdens the plaintiff's free exercise of religion. 42 U.S.C. § 2000bb-1(a); *Hobby Lobby*, 573 U.S. at 695; *Navy Seal 1*, 2021 5448970, at *10. This "trigger[s] RFRA's strict scrutiny." *Navy Seal 1*, 2021 WL 5448970, at *10. "Exercise of religion" for purposes of the RFRA "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §§ 2000bb-2, 2000cc-5(7)(A).

The plaintiff must show that the religious exercise "is grounded in a sincerely held religious belief." *Holt*, 574 U.S. at 360-61. The conduct at issue must be "based on a religious belief, not merely a personal, non-religious belief" or some other motivation. *New Doe Child #1*, 891 F.3d at 587; *see also U.S. v. Barnes*, 677 F. App'x 287, 277 (6th Cir. 2017) (rejecting RFRA claim where ample evidence demonstrated that claimant's belief about marijuana was primarily a personal one). "[F]ederal courts have no business addressing [] whether the religious belief

asserted in a RFRA case is reasonable." *Hobby Lobby*, 573 U.S. at 724. "Instead, [the court's] narrow function in this context is to determine whether the line drawn reflects an honest conviction." *Id.* at 725-26 (internal quotation marks omitted) (finding that, because the contraceptive mandate forced plaintiff to pay an enormous sum of money if plaintiffs insisted on following their religious beliefs, the mandate clearly imposed a substantial burden on those beliefs); *see also New Doe Child #1*, 891 F.3d at 586-87 (6th Cir. 2018) ("it is not within the court's purview to question the reasonableness of" sincerely held religious beliefs "[n]or is it the court's role to say that their religious beliefs are mistaken or insubstantial") (internal quotation marks omitted).

The plaintiff also must show that the government action "substantially burdened that exercise of religion." *Holt*, 574 U.S. at 361; *see also New Doe Child #1*, 891 F.3d at 587 (plaintiffs must show "an actual incompatibility between their religious beliefs and the conduct at issue"). "The substantial-burden test asks whether the Government is effectively forcing plaintiffs to choose between engaging in conduct that violates sincerely held religious beliefs and facing a serious consequence." *New Doe Child #1*, 891 F.3d at 589. "[T]he Government substantially burdens an exercise of religion when it places substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bars his sincere faith-based conduct." *Id.* (internal quotation marks omitted; alterations adopted).

Next, if the plaintiff has demonstrated that the government action substantially burdens his or her religious exercise, then the defendant must demonstrate that the action (1) furthers a compelling governmental interest and (2) is the least restrictive means to further that interest. 42 U.S.C. § 2000bb-1(b); *Hobby Lobby*, 573 U.S. at 695; *see also Navy Seal 1*, 2021 WL 5448970, at *9 ("assuming a plaintiff presents prima facie evidence of a substantial burden on a sincerely

held religious exercise, the government bears the burden to prove that the law in question furthers a compelling governmental interest by the least restrictive means available").  Regarding the first requirement, the RFRA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened."  *Hobby Lobby*, 573 U.S. at 726 (internal quotation marks omitted).  This requires the court "to look beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants."  *Id.* at 726-27 (internal quotation marks omitted); *see also Navy Seal 1*, 2021 WL 5448970, at *9 (same).  Regarding the second requirement, "[t]he least-restrictive-means standard is exceptionally demanding."  *Hobby Lobby*, 573 U.S. at 728.  The defendant must show that it "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties."  *Id.* (finding that a suggested alternative procedure would be less restrictive of the plaintiff's religious liberty and the government had not shown that the alternative procedure was not a viable alternative).

### b. <u>Application</u>

Here, Poffenbarger has demonstrated that government action substantially burdens his free exercise of religion.  Defendants do not dispute that Poffenbarger has sincerely held religious beliefs about the available COVID-19 vaccines.  (*See also* Doc. No. 1-3.)  The Court also finds that his religious beliefs are being burdened by Defendants' requirement that he take the vaccine or face serious consequences.  *Holt*, 574 U.S. at 361 (where sincerity of petitioner's belief was not disputed, petitioner's religious exercise was substantially burdened by department of correction's policy requiring him to shave his beard or face serious disciplinary action); *Hobby Lobby*, 573 U.S. at 720 (plaintiffs had a sincere religious belief that life begins at conception, and requiring them to arrange for health insurance coverage that covered methods of birth control or face severe

economic consequences substantially burdened their free exercise of religion); *Cavin v. Mich. Dept. of Corrections*, 927 F.3d 455, 458-59 (6th Cir. 2019) (department of corrections' policy burdened desired religious exercise of prisoner—who practiced Wicca—because it prevented the group worship that the prisoner sought). There is "an actual incompatibility between [Poffenbarger's] religious beliefs and the conduct at issue." *New Doe Child #1*, 891 F.3d at 587. Additionally, through the order Poffenbarger received, the Air Force "places substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 589; *see also Air Force Officer*, 2022 WL 468799 at *3, 9 (explaining that plaintiff-reservist "faces the choice of complying with the Air Force's order to receive a COVID-19 vaccine or violating her religious beliefs," and "[v]ery few scenarios paint a bleaker picture than giving up your livelihood in order to follow your religious beliefs").

Therefore, the Air Force's action must fall within the exception set forth in subsection (b) of 42 U.S.C. § 2000bb-1 to avoid violating the RFRA. Regarding the furtherance-of-a-compelling-governmental-interest requirement, Defendants assert that the Air Force has a compelling interest in (1) preventing the spread of the COVID-19 virus among its ranks; and (2) ensuring military readiness and the health and safety of airmen (Doc. No. 22 at PageID 357). *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest"); *Singh v. McHugh*, 185 F. Supp. 3d 201, 222 (D.D.C. 2016) (finding that military readiness is a compelling government interest); *but see BST Holdings, L.L.C. v Occupational Safety and Health Admin., U.S. Dept. of Labor*, 17 F.4th 604, 611 n.10 (5th Cir. 2021) ("society's interesting in slowing the spread of COVID-19 cannot qualify as compelling forever") (internal quotation marks omitted and alteration adopted); *Air Force Officer*, 2022 WL 468799 at *10 ("[a]t bottom, [d]efendants simply don't explain why they have a compelling

interest in *Plaintiff* being vaccinated while so many other Air Force service members are not") (emphasis in original). The Court will assume that Defendants' asserted governmental interests are compelling with respect to Poffenbarger and within the meaning of the RFRA, and proceed to the final prong of the RFRA test—the least-restrictive-means requirement. *Hobby Lobby*, 573 U.S. at 728 (following this procedure).

Defendants have not shown that the Air Force's action meets the least-restrictive-means test. The evidence indicates that the Air Force has granted virtually zero exemptions to the COVID-19 vaccine mandate on religious grounds—none prior to the time that Poffenberger's final appeal was denied. *Air Force Officer*, 2022 WL 468799, at *1 ("[d]espite thousands of requests for religious exemption, the Air Force hadn't granted a single one of them when [p]laintiff filed her Complaint"; "as of January 31, 2022, the Air Force had yet to approve a single religious exemption," and "the Air Force granted these nine exemptions in the" following two weeks). At the same time, the Air Force has granted thousands of exemptions to the COVID-19 vaccine mandate on non-religious grounds. (Doc. No. 22-16 at PageID 885; Doc. No. 22-19 at PageID 985; Doc. No. 26-1.) This supports that less restrictive means of furthering the Air Force's interests are being provided (even if only on a "temporary" basis) on non-religious grounds. And, the Defendants have not shown why such less restrictive means cannot likewise be provided to Poffenbarger. *See Hobby Lobby*, 573 U.S. at 730 (defendant governmental entity had already provided an accommodation for others who had objections to the governmental action). As the court in *Air Force Officer* recently explained in a very similar case:

> No matter whether one service member is unvaccinated for a medical reason and another unvaccinated for a religious reason, one thing remains the same for both of these service members—they're both unvaccinated. In other words, both of these service members pose a similar hazard to Defendants' compelling interest in stemming the spread of COVID-19 within the military.

*Air Force Officer*, 2022 WL 468799, at *11 (internal quotations omitted); *see also U.S. Navy*

*SEALS 1-26*, 2022 WL 34443, at *7 (finding that the Navy's "vaccine mandate fails strict scrutiny" because it "treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity").

The current evidence appears to support Poffenbarger's assertion that the Air Force is systematically denying religious exemptions. *Air Force Officer*, 2022 WL 468799, at *1 n.1, 10 ("[w]ith such a marked record disfavoring religious accommodation requests, the Court easily finds that the Air Force's process to protect religious rights is both illusory and insincere" and finding that, "[a]lthough the Air Force claims to provide a religious accommodation process, it proved to be nothing more than a quixotic quest for [p]laintiff because it was by all accounts, … theater") (internal quotation marks omitted). The Air Force has granted approximately ten temporary exemptions on religious grounds (all after this case was filed), while allowing thousands of temporary exemptions on non-religious grounds. And, the circumstances of the approximately ten religious exemptions is not clear.[6] Concerning too—and supporting that there has been a double standard between assessing medical or administrative accommodation requests on the one hand and religious accommodation requests on the other—is that the requirement for using the Religious Resolution Team (which, again, is "a multidisciplinary team that advises commanders regarding resolution of religious liberty matters") has been waived by the Air Force Reserve Command for purposes of assessing religious accommodation requests for the COVID-19 vaccine mandate. (Doc. No. 22-13 at PageID 747; Doc. No. 22 at PageID 343.) Even if the Air Force has a valid reason for doing so, this shows that the Air Force has not been following its typical policy or procedure for assessing religious accommodations.

---

[6] Poffenbarger alleges, on information and belief, that the religious exemptions were only given to members who were at the end of their terms of service with the military. (Doc. No. 26 at PageID 1027.) This allegation was at least generally supported by Defendants' counsel's statements at the preliminary injunction hearing.

Additionally, in their Opposition, the Defendants address the merits of many, if not all, of Poffenbarger's proposed less restrictive means. (*See* Doc. No. 22 at PageID 359-66.) For example, regarding his proposal to be isolated, Defendants argue that, because Poffenbarger "must be trained and then work as an intelligence officer, he would routinely handle classified materials, access classified systems, and discuss classified information with his colleagues," yet, "due to security protocols, such activities can only be done in secured facilities" and he would "be in contact with around a dozen people during his average workday." (*Id.*) However, Poffenbarger proposes other means for the Air Force to further its interests without placing substantial pressure on him to violate his religious beliefs: honorably discharge him.[7] (Doc. No. 2 at PageID 57.) And, Defendants failed to show that this is not a viable alternative. *Hobby Lobby*, 573 U.S. at 728.

Unlike the Air Force's mandate for other vaccines (to which Poffenbarger willingly complied), Poffenbarger could not have known about the COVID-19 vaccine mandate when he chose to join the reserves in 2014.[8] In response to Poffenbarger's contention that honorably discharging him would be a lesser restrictive means of furthering the Air Force's interests, Defendants argue that Poffenbarger "does not explain what burden the current Air Force policy of involuntarily reassigning him to the Individual Ready Reserve to complete his service obligation would place on his exercise of religion that would be lessened through discharge," and "reassignment to the Individual Ready Reserve is a less significant step than discharge because it would allow Plaintiff to remain a part of the Air Force and return to a participating reserve status should he choose to vaccinate on a future date." (Doc. No. 22 at PageID 362-63 (internal quotation

---

[7] The Court does not make any findings regarding whether any of Poffenbarger's other proposals are, in fact, less restrictive means of furthering the alleged compelling government interests.

[8] Defendants' focus (*see, e.g.,* Doc. No. 22 at PageID 340-41, 346-47) on Poffenbarger's willingness to receive these other vaccines, such as for polio and tetanus, is concerning because it tends to demonstrate a lack of understanding of the basis for Poffenbarger's religious objection to the available COVID-19 vaccines—which, therefore, may have affected the decision to deny his religious accommodation request.

marks omitted); *see also, e.g.,* Doc. No. 22-18 at PageID 975 (explaining current policy).)

However, Defendants ignore more serious action that the Air Force has threatened in an effort to get Poffenbarger to comply with its order to take a COVID-19 vaccine, despite their current policy. The December 10, 2021 order that Poffenbarger received stated: "Failure to comply with this lawful order may result in administrative and/or punitive action for Failing to Obey an Order under Article 92, Uniform Code of Military Justice." (Doc. No. 1-6.) Pursuant to that article, "Any person subject to [the Uniform Code of Military Justice] who (1) violates or <u>fails to obey any lawful general order or regulation</u>; (2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or (3) is derelict in the performance of his duties; <u>shall be punished as a court-martial may direct</u>." 10 U.S.C. § 892 (emphasis added). Both the January 3, 2022 Letter of Reprimand and the January 10, 2022 Letter of Reprimand that Poffenbarger received stated: "It has come to my attention you have failed to follow a lawful order to get the Pfizer COVID-19 vaccine. … This is a violation of Article 92, Uniform Code of Military Justice." (Doc. No. 11-1 at PageID 294 (1/3/22 Letter of Reprimand); Doc. No. 15-1 (1/10/22 Letter of Reprimand) at PageID 314.) Additionally, counsel for Defendants acknowledged during the preliminary injunction hearing that the Air Force could court-martial Poffenbarger. (*See also* Doc. No. 22 at PageID 344 ("Air Force commanders have a variety of administrative and disciplinary actions that may be taken against service members who do not have an exemption and who refuse the COVID-19 vaccine") (citing the Declaration of Colonel Elizabeth Hernandez).) The Declaration of Colonel Hernandez states: "Possible sentences in a court-martial include confinement, reduction in grade (enlisted only), and punitive discharges." (Doc. No. 22-14 (Hernandez Decl.) at PageID 818.) Punitive discharges include dishonorable discharges or the equivalent thereof. (*Id.*)

Honorable discharge would be, to use Defendants' phrase, a "less significant step" than a punitive discharge or being court-martialed. (Doc. No. 22 at PageID 362-63.) Contrary to the Defendants' assertion, there is a "basis for the Court to conclude that [Poffenbarger's] proposed less restrictive alternative[] [of honorably discharging him] … would protect the military's compelling interests as effectively as immunization." (Doc. No. 22 at PageID 338-39.) And, regardless of whether Poffenbarger wants to be honorably discharged (it is clear he does not[9]), and regardless of whether the Air Force currently plans[10] or wants to do so, for purposes of the Court's current analysis, honorably discharging Poffenbarger would be a means to further, in Defendants' words, "the military's interests in minimizing the risk of service member illnesses and stemming the spread of COVID-19 within the military to ensure military readiness" (Doc. No. 22 at PageID 359).

This provides additional support that the Air Force's substantial burden on Poffenbarger's exercise of religion through its enforcement of the COVID-19 vaccine mandate is not the least restrictive means of furthering its asserted compelling interests. *Burwell*, 573 U.S. at 690-91 (the RFRA "prohibits the Federal Government from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest"); 42 U.S.C. § 2000bb-1(b).

### 3) First Amendment claim

Poffenbarger's second claim is for violation of the First Amendment of the United States Constitution. (Doc. No. 1 at PageID 11.) He alleges that "Defendants' actions …, including

---

[9] Poffenbarger explained that honorable discharge would be a "final option." (Doc. No. 2 at PageID 56-57.)

[10] Prefacing that he did not "want to get ahead of the fact," Defendants' counsel explained at the preliminary injunction hearing that, while their ultimate hope is that Poffenbarger will get the COVID-19 vaccine (whether because he has changed his mind or another version of the vaccine becomes available that would not conflict with his sincerely-held religious beliefs), it would be "fair to assume" that the Air Force's current plan for Poffenbarger is to transfer him to the IRR until the end of his terms of service, then he would be separated with an honorable discharge.

hostility towards religious beliefs, as well as the creation of secular exemptions, constitute a violation of the First Amendment's Free Exercise Clause."  (*Id.*)

An analysis similar to the RFRA analysis is conducted with respect to this Free Exercise claim in this case.  *Air Force Officer*, 2022 WL 468799, at *11 (determining that, "[f]or the same reasons [p]laintiff is likely to succeed on her RFRA claim, she is also likely to prevail on her First Amendment claim").  In fact, Defendants assert that if Poffenbarger "prevails on his RFRA claim there is no need to reach his separate First Amendment theory, as the Court would already have concluded that the military's vaccination requirement is not narrowly tailored to serve a compelling government interest" or, "[c]onversely, if the Government prevails under RFRA, it would necessarily prevail under Plaintiff's First Amendment theory as well."  (Doc. No. 22 at PageID 366-67.)

### a.  Framework for Free Exercise Clause claims

"The Free Exercise Clause protects religious observers against unequal treatment." *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020); *see also* U.S. CONST. amend. I ("Congress shall make no law … prohibiting the free exercise" of religion).  It also "protects against indirect coercion or penalties on the free exercise of religion." *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 732 (6th Cir. 2021) (internal quotation marks omitted).  "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021) (internal quotation marks omitted); *see also Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) ("the Free Exercise Clause does not protect sympathetic religious practices alone" and "that's exactly what the federal courts are not to judge—how individuals comply with their own faith as they see it").

To prevail on a Free Exercise claim, "plaintiffs must show that defendants burdened their

religious exercise and that defendants' conduct cannot withstand the appropriate level of scrutiny." *Dahl*, 15 F.4th at 731. In *Dahl*, the Sixth Circuit found that the defendant "University's failure to grant religious exemptions to plaintiffs burdened their free exercise rights. The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports." *Id.* at 732.

If a plaintiff shows that the defendant burdened his or her religious exercise, then the court must consider the type of scrutiny to apply. "Of course, not every burden on the free exercise of religion is unconstitutional." *Dahl*, 15 F.4th at 733. "A neutral law of general applicability need not be justified by a compelling governmental interest even if the law incidentally burdens religious practices." *Id.* (internal quotation marks omitted). "But a law that is not neutral and generally applicable must undergo the most rigorous of scrutiny." *Id.* (internal quotation marks omitted).

A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877. "[A] policy that provides a 'mechanism for individualized exemptions' is not generally applicable." *Dahl*, 15 F.4th at 733 (quoting *Fulton*, 141 S. Ct. at 1877). "Accordingly, where a state extends discretionary exemptions to a policy, it must grant exemptions for cases of 'religious hardship' or present compelling reasons not to do so." *Id.*

"Neutral" in this context means that a law or regulation both does not distinguish among religions and does not distinguish between religious and non-religious. *Hartmann v. Stone*, 68 F.3d 973, 978 (6th Cir. 1995). "A double standard is not a neutral standard." *Ward v. Polite*, 667 F.3d 727, 739-40 (6th Cir. 2012); *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("government regulations are not neutral and generally applicable … whenever they treat *any*

comparable secular activity more favorably than religious exercise").

If the law or regulation is not neutral and generally applicable, then strict scrutiny is triggered. *Tandon*, 141 S. Ct. at 1296. "[T]he government has the burden to establish that the challenged law satisfies strict scrutiny." *Id.* "A government policy can survive strict scrutiny only if it advances interests of the highest order and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (internal quotation marks omitted). "[N]arrow tailoring requires the government to show that measures less strictive of the First Amendment activity could not address its interest." *Tandon*, 141 S. Ct. at 1296-97. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881.

### b. <u>Application</u>

Poffenbarger has shown that Defendants burdened his religious exercise, as shown above in the analysis of his RFRA claim. Additionally, the Air Force's COVID-19 vaccine mandate policy is subject to strict scrutiny because it is not neutral and generally applicable. *Dahl*, 15 F.4th at 734 ("Because the University's policy is not neutral and generally applicable, we analyze the policy through the lens of what has come to be known as strict scrutiny") (internal quotation marks omitted). It provides a mechanism for individualized exemptions. *See Dahl*, 15 F.4th at 733 (a policy that said "all student-athletes must provide proof of at least one dose of a COVID-19 vaccine to maintain full involvement in the athletic department," "[b]ut medical or religious exemptions and accommodations will be considered on an individual basis," was not generally applicable). And, it distinguishes between religious and non-religious exemptions. *Ward*, 667 F.3d at 739-40 (explaining that "[w]hat poses a problem is not the adoption of an anti-discrimination policy [by defendant]; it is the implementation policy, permitting secular exemptions but not religious ones and failing to apply the policy in an even-handed, much less a faith-neutral, manner to" plaintiff). This determination aligns with other district courts that have addressed the issue regarding the

military's COVID-19 vaccine mandate policy. *See, e.g., Air Force Officer*, 2022 WL 468799, at *12 (Air Force "Defendants' COVID-19 vaccination requirement is neither neutral towards religion nor generally applicable"); *U.S. Navy SEALS 1-26*, 2022 WL 34443, at *11 (determining that the Navy's mandate is not neutral and generally applicable; "by accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why a servicemember is not vaccinated" and "the 'comparable secular activity' includes refusing the vaccine for medical reasons or participation in a clinical trial")

Regarding the application of strict scrutiny, according to *Dahl*, the question "'is not whether the [Air Force] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exception' to plaintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Dahl*, 15 F.4th at 735 (quoting *Fulton*, 141 S. Ct. at 1881) (alteration adopted). As in *Fulton* where the city "offer[ed] no compelling reason why it has a particular interest in denying an exception to [plaintiff] while making them available to others," the Air Force offers no compelling reason why it has a particular interest in denying a temporary exemption to Poffenbarger while granting one for others who, for example, are allergic to the components of the vaccine. *Fulton*, 141 S. Ct. at 1881-82 (making this determination despite finding that the city's asserted interests were important goals); *see also Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614-15 (6th Cir. 2020) ("[w]e don't doubt the Governor's sincerity in trying to do his level best to lessen the spread of the virus or his authority to protect the Commonwealth's citizens," "[a]nd we agree that no one, whether a person of faith or not, has a right to expose the community … to communicable disease," "[b]ut restrictions inexplicably applied to one group and exempted from another do little to further these goals and do much to burden religious freedom") (internal quotation marks omitted). Additionally, for the same reasons

explained above regarding the failure of the least-restrictive-means test for the RFRA claim, the narrow tailoring test for the Free Exercise claim fails here. *Fulton*, 141 S. Ct. at 1881 ("so long as the government can achieve its interests in a manner that does not burden religion, it must do so"). Thus, Poffenbarger is likely to succeed on his Free Exercise claim too.

Finally, throughout their Opposition brief, Defendants (rightfully) emphasize that courts typically give deference to the military. The Sixth Circuit has explained that, in a Free Exercise analysis, this consideration of military deference "stands as a separate option open to the military to justify its regulation." *Hartmann*, 68 F.3d at 983 n.7 (involving Free Exercise challenge to Army regulation that was not neutral and generally applicable). When a court "conclude[s] that the regulation would fail the normal constitutional test," it "still must determine whether, in the face of what is normally a constitutional violation, the court must defer to military judgment." *Id.*

As shown in the justiciability section[11] above, the Court recognizes that the military is a "specialized society separate from civilian society" and "must insist upon a respect for duty and a discipline without counterpart in civilian life in order to prepare for and perform its vital role." *Goldman v. Weinberger*, 475 U.S. 503, 506-07 (1986) (internal citation and quotation marks omitted). Although "Congress overruled the result reached in *Goldman* by statute," courts still recognize deference to the military. S. Rep. No. 103-111, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (1993) (Senate report on RFRA explaining that "the courts have always extended to military authorities significant deference in effectuating" the military's interest in maintaining good order, discipline, and security, and "[t]he committee intends and expects that such deference will continue under this bill"). The Supreme Court has explained that courts "give great deference to the

---

[11] The Sixth Circuit decided *Hartmann* before it decided *Harkness*, which adopted the *Mindes* framework for determining the reviewability of a particular military decision. *See Harkness*, 858 F.3d at 443 (recognizing "deference to the unique role of the military in our constitutional structure" as one justification for the general reluctance of courts "to review claims involving military duty assignments").

professional judgment of military authorities concerning the relative importance of a particular military interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 25 (2008) (holding that, where the Navy's most senior officers underscored the threat posed by enemy submarines and the need for extensive sonar training to counter this threat, plaintiffs who had claimed that the sonar was causing serious injuries to some marine mammals were not entitled to a preliminary injunction restricting the training); *see also Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("[i]t is difficult to conceive of an area of governmental activity in which the courts have less competence" than "[t]he complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force"); *Rostker*, 453 U.S. at 66 ("[t]he operation of a healthy deference to legislative and executive judgments in the area of military affairs is evident in several" decisions of the Supreme Court).

However, "[t]hese aspects of military life do not, of course, render entirely nugatory in the military context the guarantees of the First Amendment." *Goldman*, 475 U.S. at 507; *Gilligan*, 413 U.S. at 11-12 ("we neither hold nor imply that the conduct of [a branch of the military] is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief"). "Clearly the courts must grant the military wide latitude in its operations," yet "[n]onetheless, some First Amendment protection still exists." *Hartmann*, 68 F.3d at 984 (citing *Goldman*, 475 U.S. at 507). Additionally, First Amendment guarantees have not been abolished because of, or stayed during, the COVID-19 pandemic. *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 68 ("even in a pandemic, the Constitution cannot be put away and forgotten").

The issue is "whether in light of traditional deference granted to the military by the courts

they have nonetheless managed to cross the line separating the constitutional from the unconstitutional." *Hartmann*, 68 F.3d at 984. The Court believes that, given the issue and evidence presented as set forth above, there is a sufficient showing at this stage that the Defendants have nonetheless crossed that line. Defendants essentially want "the Court to accord a degree of deference that is tantamount to unquestioning acceptance, which is not the proper function of a court in a RFRA case" or a First Amendment case. *Singh*, 185 F. Supp. 3d at 221-22 (explaining that, "while the [c]ourt must credit the Army's assertions and give due respect to its articulation of important military interests," the court "must consider whether an exception is required under the strict scrutiny test, and hold defendants to their burden of demonstrating that the denial of the limited accommodation in this case is the least restrictive means to advance the Army's compelling interest"); *see also Hartmann*, 68 F.3d at 984 (finding that the military had crossed the line into unconstitutionality, despite the deference granted to the military, in a First Amendment free exercise challenge to military regulation).

### C. <u>Irreparable Injury</u>

Regarding the second factor in the balancing test when considering a motion for a preliminary injunction, the Court finds that Poffenbarger has shown that he would suffer irreparable injury absent the injunction. Generally, injury is irreparable if it cannot be fully compensable by monetary damages. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Id.*

Much of the alleged harm to Poffenbarger is not irreparable. *See Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) ("assertions of loss of income, loss of retirement and relocation pay, and damage to his reputation resulting from the stigma attaching to a less than honorable discharge" are insufficient to show irreparable harm); *Chilcott v. Orr*, 747 F.2d 29, 33

(1st Cir. 1984) ("post-discharge remedies are available in the Air Force that could result in [plaintiff's] discharge being upgraded to honorable"); *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 221 (D.D.C. 2016) (plaintiff service member could "be made whole by being reinstated and receiving back pay if he eventually prevails on his claims"); *Church*, 2021 WL 5179215, at *17 ("even if the Service Member Plaintiffs did ultimately face some form of adverse employment action, like military discharge or a delayed promotion, the weight of authority indicates that such employment-based harm is not irreparable").

However, it is firmly established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 67; *Dahl*, 15 F.4th at 736 ("[e]nforcement of the University's policy likely would deprive plaintiffs of their First Amendment rights, an irreparable injury"). This principle also applies to a violation of rights under the RFRA. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (applying principle to violation of RLUIPA rights "because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise"); *New Doe Child #1*, 891 F.3d at 587 n.2 (explaining that RLUIPA mirrors RFRA). As shown above in analyzing the likelihood of success on the merits of Poffenbarger's claims, Defendants' actions with respect to Poffenbarger have not been justified, and he has suffered the loss of First Amendment freedoms. *See Air Force Officer*, 2022 WL 468799, at *12 (since plaintiff's religious accommodation request was ultimately denied and essentially infringed upon the free exercise of her religion, plaintiff suffered an irreparable injury); *U.S. Navy SEALs 1-26*, 2022 WL 34443, at *13 ("[t]he crisis of conscience imposed by the mandate is itself an irreparable harm").

### D.  <u>Substantial Harm to Others & Public Interest</u>

As referenced above, the third and fourth factors to consider for a preliminary injunction

motion merge when the Government is the party opposing injunctive relief. *Wilson*, 961 F.3d at 845. Defendants argue that "the entry of an injunction granting Plaintiff's and thousands of other religious exemption requests and imposing judicial supervision over the Air Force's exemption process would indisputably harm the Air Force, its vital mission, the national security of the United States, and the public interest." (Doc. No. 22 at PageID 339.) However, as shown below, the Court is not granting such a broad injunction.

The Court finds that the third and fourth factors weigh in favor of issuing limited injunctive relief. This case involves the clash of weighty public interests. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *Dahl*, 15 F.4th at 736 (same). The public also has an interest in national defense, which includes ensuring military readiness. *Winter*, 555 U.S. at 24. Needless to say, the public's interest in national defense is very strong. However, the Court does not believe that the limited scope of this case would cause substantial harm to the Air Force or its ability to protect the nation's citizenry. *Air Force Officer*, 2022 WL 468799, at *12 ("[p]laintiff's religious-based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully vaccinated Air Force's mission to provide a ready national defense"). And, the Supreme Court has recognized that, "[o]f course, military interests do not always trump other considerations, and [the Court has] not held that they do." *Winter*, 555 U.S. at 26; *see also Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 68 ("even in a pandemic, the Constitution cannot be put away and forgotten").

**E.  Scope of Relief**

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). "The purpose of such

interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Id.* (internal citation omitted). "In the course of doing so, a court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." *Id.* (internal quotation marks omitted).

As referenced above, Poffenbarger requests a preliminary injunction, among other things, "granting his religious exemption"; "requiring Defendants to comply with the federal RFRA both as to Poffenbarger and more broadly to the other airmen"; ceasing Defendants' alleged illegal discrimination against him; "grant[ing] the religious accommodation request to any other airman, who has documented a sincerely held religious belief, from Defendants' vaccination requirements"; enjoining Defendants "from their policies and practices of [allegedly] engaging in hostility toward religion"; and, "[t]o the extent Defendants have taken punitive action against any airman from September 1, 2021 to the present … [who] submitted a religious accommodation request from Defendants' vaccination requirements, and to whom the Defendants' confirmed (or did not dispute) the sincerity of the belief at issue, … provid[ing] full and complete relief to such persons, including restoration to active duty (or active reserve duty, as the case may be), record expungement, and the restoration of pay and allowances." (*See* Doc. No. 2 at PageID 44; Doc. No. 2-4; Doc. No. 26 at PageID 1022, 1038-39.)

However, based on all of the considerations and the purpose of preliminary injunctive relief, the Court will only enter a relatively limited preliminary injunction and one that only applies to Poffenbarger. *Univ. of Texas*, 451 U.S. at 395 ("[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"). Narrower injunctive relief is especially appropriate here considering the deference given to military authorities concerning the importance of a particular military interest, the significant

public interest in ensuring a strong national defense, and the potential for a wide array of bases for a religious accommodation request. *Winter*, 555 U.S. at 25. Poffenbarger cites *Califano v. Yamasaki*, 442 U.S. 682 (1978) to support his request for a nationwide preliminary injunction; however, in that case the Supreme Court determined that class certification—of a nationwide class—was permissible. *Califano*, 442 U.S. at 702-03. This Court has not determined that class certification—of a nationwide class or otherwise—is appropriate. *Air Force Officer*, 2022 WL 468799 at *4 (limiting preliminary injunctive relief to the named plaintiff; plaintiff "hasn't made any attempt to bring these [other] service members into this lawsuit by way of joinder or a class action" and finding that "[p]laintiff's actions when considered against the applicable law simply don't warrant a nationwide injunction, especially considering she asks the Court to enjoin our entire military force"); *see also Trump v. Hawaii*, 138 S.Ct. 2392, 2425 (2018) (Thomas, J., concurring) (expressing concerns with "universal injunctions," which "prohibit the Government from enforcing a policy with respect to anyone, including nonparties"). In fact, Poffenbarger recognizes in the Motion that "each of these [religious accommodation] requests necessarily depends on the facts and circumstances of each request." (Doc. No. 2 at PageID 60; *see also* Doc. No. 22-13 at PageID 745 ("Not all religious accommodation requests are the same")).)

### III. <u>CONCLUSION</u>

Having considered the factors, the Court finds that a preliminary injunction should issue. However, the Court will not grant much of what Poffenbarger has requested for preliminary injunctive relief, either because the requested relief fails to correspond with the purpose of a preliminary injunction or because Poffenbarger has not made a sufficient showing to grant such relief or that such relief would be appropriate under the circumstances presented. *Univ. of Texas*, 451 U.S. at 395 ("[t]he purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held").

Federal Rule of Civil Procedure 65(c) sets forth a security requirement. Fed. R. Civ. P. 65(c) ("The court may issue a … temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). Here, neither party raised the issue, and the Court finds that no security is required. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("[w]hile we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security"); *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 952– 53 (6th Cir. 2007) ("[c]ontrary to the strong language of Rule 65(c), this Court has found that a court has no mandatory duty to impose a bond as a condition for issuance of injunctive relief," but "a district court errs when it fails to expressly consider the question of requiring a bond when the issue has been raised") (internal quotation marks omitted; alterations adopted); *RECO Equip., Inc. v. Jeffrey S. Wilson*, No. 20-4312, 2021 WL 5013816, at *5 (6th Cir. Oct. 28, 2021).

The Court **GRANTS, IN PART,** Plaintiff's Motion for Preliminary Injunction (within Doc. No. 2). The Court **ORDERS** the following pending further order:

> A. Defendants, as well as any persons acting in concert with them, are enjoined and restrained from taking any further adverse action against Poffenbarger because of his refusal to get vaccinated for COVID-19 due to his religious beliefs, including that Defendants are prohibited from involuntarily transferring/reassigning Poffenbarger to the Individual Ready Reserve and from allowing any other adverse action that stems from the adverse actions already taken (e.g., loss of health care

benefits). Although the Court is unaware of any additional adverse action taken against Poffenbarger since January 24, 2022 (or even after January 10, 2022), "further adverse action" shall include any adverse action that had not been taken as of the time that the Court issued its January 24, 2022 Order (Doc. No. 19); thus, Defendants are not required to revoke the January 10, 2022 Letter of Reprimand, remove Poffenbarger from "No Pay / No Points" status, or allow him to conduct any military work at Wright-Patterson Air Force Base.

B. Defendants, as well as any persons acting in concert with them, are enjoined and restrained from taking any adverse action against Poffenbarger on the basis of this lawsuit or his request for religious accommodation from the COVID-19 vaccine;

C. Defendants, as well as any persons acting in concert with them, must comply with the RFRA with respect to Poffenbarger's request for exemption from its COVID-19 vaccine mandate policy; and

D. In accordance with Federal Rule of Civil Procedure 65(d)(2), this Order binds the following who receive actual notice of it by personal service or otherwise: the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, February 28, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE